**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| AUTO-OWNERS INSURANCE COMPANY, | ) ) ) | |
| Plaintiff | ) ) | |
| v. | ) ) | CIVIL ACTION FILE NO. |
| OVATION CONDOMINIUM ASSOCIATION, INC., AND ALYS W. COX, | ) ) ) ) | _____ |
| Defendants. | ) ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

COMES NOW, AUTO-OWNERS INSURANCE COMPANY ("Auto-Owners"), Plaintiff in the above-styled action, and files this Complaint for Declaratory Judgment, showing this honorable Court as follows:

### PARTIES AND JURISDICTION

1.

This is an action for declaratory judgment brought pursuant to Rule 57 of the Federal Rules of Civil procedure and 28 U.S.C. § 2201, to declare the rights and other legal relations surrounding the questions of actual controversy which presently

exist among Auto-Owners and Ovation Condominium Association, Inc. ("Ovation") and Alys W. Cox ("Cox").

2.

Defendant Ovation is a corporation organized and existing under the laws of the State of Georgia, who may be served by registered agent at 289 South Culver Street, Lawrenceville, Gwinnett County, Georgia 30046.

3.

Defendant Cox is an individual and citizen of Fulton County, Georgia, who may be personally served at 3040 Peachtree Road North West Unit 210, Atlanta Georgia 30305.

4.

Defendant Ovation seeks coverage from Auto-Owners under a policy of liability insurance for the allegations made against them in a lawsuit filed against them by Defendant Cox, which is further detailed below.

5.

Defendant Cox is the plaintiff in the underlying lawsuit detailed below and, therefore, is a necessary party to this action.

6.

Auto-Owners is a corporation organized and existing under the laws of the State of Michigan and having its principal place of business in Michigan. Auto-Owners submits itself to the jurisdiction and venue of this Court.

7.

This Court has original jurisdiction over this action under the provisions of U.S.C. § 1332, because it is a civil action in which the amount in controversy exceeds the sum or value of $75,000, exclusive on interest and costs, and is among citizens of different states.

8.

Venue in this action is proper pursuant to 28 U.S.C. § 1391.

**FACTUAL BACKGROUND**

9.

On October 20, 2021, Cox filed the lawsuit captioned <u>Alys W. Cox v. Ovation Condominium Association, Inc.</u>, in the Superior Court of Fulton County, Georgia, Civil Action File No. 2021CV355900 ("underlying lawsuit"), naming Ovation Condominium Association, Inc. as Defendant. A copy of the underlying lawsuit is attached hereto as Exhibit 1.

10.

Cox has been included as named Defendant in this action for declaratory relief because she has a potential financial interests in the outcome of this action.

11.

Ovation was served with the underlying lawsuit and has filed its Answer to same.

12.

According to the underlying lawsuit, Cox alleges that Ovation owns a nineteen (19) story condominium building located at 3040 Peachtree Road NW, Atlanta, GA 30305 (the "Ovation building"). See Exhibit 1 at ¶ 2.

13.

According to the underlying lawsuit, Cox purchased Unit 210 in the Ovation building on February 16, 2006. See Exhibit 1 at ¶ 2.

14.

According to underlying lawsuit, the Ovation building has a power backup generator ("Ovation Generator") that is located on one of the lower floors of the parking garage, below the floors where the residential units exist. See Exhibit 1 at ¶ 4.

15.

According to the underlying lawsuit, the Ovation Generator expels diesel exhaust through an exhaust pipe that terminates at the Southern facing external wall of the building. <u>See </u>Exhibit 1 at ¶ 5.

16.

According to the underlying lawsuit, throughout the life of the building, the Ovation Generator has been operated when power from the power grid is unavailable or during testing. <u>See </u>Exhibit 1 at ¶ 6-7.

17.

According to the underlying lawsuit, Ovation operates the Ovation Generator and is in control of the supply of diesel exhaust that is expelled from it. <u>See </u>Exhibit 1 at ¶ 8.

18.

According to the underlying lawsuit, the diesel exhaust produced by the Ovation Generator contains neurotoxins and soot which, after substantial exposure, can be harmful to humans' health. <u>See </u>Exhibit 1 at ¶ 9.

19.

According to the underlying lawsuit, Cox's unit is located on the first residential floor, in direct proximity to Ovation Generator's exhaust termination point. See Exhibit 1 at ¶ 11-12.

20.

According to the underlying lawsuit, since 2005, Ovation failed to adequately maintain and seal the stucco wall structure adjacent to Unit 210 and failed to route the diesel exhaust to a termination point which prevented neurotoxins from entering Unit 210 or other residential units. See Exhibit 1 at ¶ 13.

21.

According to the underlying lawsuit, due to the combination of the termination point for the diesel exhaust, air flow between the interior of Unit 210 and the exterior atmosphere, and negative air pressure, diesel exhaust fumes gaseous particulates and physical particulates have repeatedly entered Unit 210, causing contamination with diesel exhaust neurotoxin molecular particulates and soot.  See Exhibit 1 at ¶ 15-17.

22.

In Count 1 of underlying lawsuit, Cox makes claims for nuisance and property damage against Ovation, alleging Ovation's use and operation of the Ovation

Generator is a continuing abatable nuisance pursuant to O.C.G.A. § 41-1-1 and that such nuisance has caused property damage to Unit 210, caused diminution in value, has caused hazards to Cox's physical health, and has caused her to move out of Unit 210. See Exhibit 1 at ¶ 19-23.

23.

In Count II of underlying lawsuit, Cox makes a claim for personal injury against Ovation, alleging Ovation failed to prevent hazardous neurotoxins contained in diesel exhaust from entering Unit 210 and damaging the health of Cox; failed to address the location of Ovation Generator diesel exhaust termination; failed to exercise ordinary and prudent care when operating a diesel generator when Ovation became aware of the hazardous condition; failed to abate the hazardous condition; failed to investigate the hazardous condition even after becoming aware of its existence; failed to operate the diesel generator in a safe and prudent manner in view of condition of the exterior wall and air-flow conditions that existed; and otherwise failed to act reasonably and prudently under the circumstances. See Exhibit 1 at ¶ 28.

24.

In Count II of the underlying lawsuit, Cox contends that the violation of O.C.G.A. § 41-1-1 and any other violations of statutory law constitute negligence

*per se* and she suffered serious injuries to her health and pain and suffering.  See Exhibit 1 at ¶ 30-33.

25.

In Count III of the underlying lawsuit, Cox makes a claim for breach of declarations against Ovation, alleging Ovation has a duty to Cox to maintain and keep in good repair any "Area of Common Responsibility" as defined on paragraph 17(b) of the Ovation Declarations. A copy of the Ovation Declarations is attached hereto as Exhibit 2. See Exhibit 1 at ¶ 36; Exhibit 2 ¶ 17(b).

26.

In Count III of the underlying lawsuit, Cox contends that she fulfilled her duty to promptly report to Ovation any defect or need for repairs for which Ovation is responsible, as defined in paragraph 17(b) of Ovation Declarations, that Ovation then had a duty to investigate possible hazardous conditions directly caused by the operation of the Building and to abate any continuing nuisance, and that Ovation failed to satisfy its obligations under the Declarations.  See Exhibit 1 at ¶ 37-40.

27.

In Count III of the underlying lawsuit, Cox alleges that Ovation breached its duty to maintain and keep in good repair areas of common responsibility including the exterior stucco wall near Unit 210 and the termination of the Ovation Generator

diesel exhaust and breached its duty to maintain a safe and prudent operation of the generator and abate the nuisance. <u>See</u> Exhibit 1 at ¶ 41-42. Cox claims she suffered specific and direct damages and request attorney's fees. <u>See</u> Exhibit 1 at ¶ 43-44.

28.

In Count IV of the underlying lawsuit, Cox makes a claim for Specific Performance against Ovation, requesting that, pursuant to O.C.G.A. § 23-2-130, Ovation be ordered to take certain actions in accordance with the terms of the Ovation Declarations. <u>See</u> Exhibit 1 at ¶ 46.

29.

In Count V of the underlying lawsuit, Cox seeks a Temporary Restraining Order, pursuant to O.C.G.A. § 9-11-65, to prohibit the operation of the Ovation Generator after notifying Ovation with notice to abate the nuisance and the Ovation Generator's continuous hazardous operation. <u>See</u> Exhibit 1 at ¶ 50-52.

30.

According to a pre-suit letter sent to Ovation, which was dated July 7, 2021, Cox sought over $800,000 in damages related to the claims which were later alleged in the underlying lawsuit.

## AUTO-OWNERS' POLICIES

### 31.

Auto-Owners issued Tailored Protection Policy Number 142318-48194320-14 to Ovation as the named insured, with effective dates from January 1, 2014 through January 1, 2015 (the "2014 Policy"). The 2014 Policy provided commercial general liability coverage for bodily injury and property damage with limits of $1 million per occurrence and $2 million generate aggregate (other than products completed operations). A copy of the 2014 Policy is attached hereto as Exhibit 3.

### 32.

Auto-Owners issued renewal Tailored Protection Policy Number 142318-48194320-14 to Ovation as the named insured with effective dates from January 1, 2015 through January 1, 2016 (the "2015 Policy").  The 2015 Policy provided commercial general liability coverage for bodily injury and property damage with limits of $1 million per occurrence and $2 million general aggregate (other than products completed operations). A copy of the 2015 Policy is attached hereto as Exhibit 4.

### 33.

Auto-Owners issued renewal Tailored Protection Policy Number 142318-48194320-16 to Ovation as the named insured with effective dates from January 1,

2016 through January 1, 2017 (the "2016 Policy"). The 2016 Policy provided commercial general liability coverage for bodily injury and property damage with limits of $1 million per occurrence and $2 million general aggregate (other than products completed operations). A copy of the 2016 Policy is attached hereto as Exhibit 5.

34.

Auto-Owners issued renewal Tailored Protection Policy Number 142318-48194320-17 to Ovation as the named insured with effective dates from January 1, 2017 through January 1, 2018 (the "2017 Policy I"). The 2017 Policy I provided commercial general liability coverage for bodily injury and property damage with limits of $1 million per occurrence and $2 million general aggregate (other than products completed operations). A copy of the 2017 Policy I is attached hereto as Exhibit 6.

35.

The 2017 Policy I was canceled effective July 6, 2017.

36.

Auto-Owners issued Tailored Protection Policy Number 142318-80096018-17 to Ovation as the named insured with effective dates from July 6, 2017 through July 6, 2018 (the "2017 Policy II"). The 2017 Policy II provided commercial general

liability coverage for bodily injury and property damage with limits of $1 million per occurrence and $2 million general aggregate (other than products completed operations). A copy of the 2017 Policy II is attached hereto as Exhibit 7.

37.

Auto-Owners issued renewal Tailored Protection Policy Number 142318-80096018-18 to Ovation as the named insured with effective dates from July 6, 2018 through July 6, 2019 (the "2018 Policy"). The 2018 Policy provided commercial general liability coverage for bodily injury and property damage with limits of $1 million per occurrence and $2 million general aggregate (other than products completed operations). A copy of the 2018 Policy is attached hereto as Exhibit 8.

38.

Auto-Owners issued renewal Tailored Protection Policy Number 142318-80096018-19 on April 23, 2019 to Ovation as the named insured with effective dates from July 6, 2019 through July 6, 2020 (the "2019 Policy"). The 2019 Policy provided commercial general liability coverage for bodily injury and property damage with limits of $1 million per occurrence and $2 million general aggregate (other than products completed operations). A copy of the 2019 Policy is attached hereto as Exhibit 9.

39.

Auto-Owners issued renewal Tailored Protection Policy Number 142318-80096018-20 on April 27, 2020 to Ovation as the named insured with effective dates from July 6, 2020 through July 6, 2021 (the "2020 Policy"). The policy provided commercial general liability coverage for bodily injury and property damage with limits of $1 million per occurrence and $2 million general aggregate (other than products completed operations). A copy of the 2020 Policy is attached hereto as Exhibit 10.

40.

Auto-Owners issued renewal Tailored Protection Policy Number 142318-80096018-21 on April 30, 2021 to Ovation as the named insured with effective dates from July 6, 2021 through July 6, 2022 (the "2021 Policy"). The policy provided commercial general liability coverage for bodily injury and property damage with limits of $1 million per occurrence and $2 million general aggregate (other than products completed operations). A copy of the 2021 Policy is attached hereto as Exhibit 11.

41.

In the commercial general liability coverage form, the 2014 Policy, 2015 Policy, 2016 Policy, and 2017 Policy I, the 2017 Policy II, 2018 Policy ("First Set of Policies") provide in relevant part as follows:

**SECTION I – COVERAGES**

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

    **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

        **(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

        **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**. No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

    **b.** This insurance applies to "bodily injury" and "property damage" only if:

- 14 -

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**d.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

<u>See</u> Exhibits 3-8.

42.

The First Set of Policies define "occurrence" to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

43.

The First Set of Policies define "bodily injury" to mean "bodily injury, bodily sickness or bodily disease sustained by a person, including death resulting from any of these at any time."

44.

The First Set of Policies define "property damage" to mean:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

45.

In the commercial general liability coverage form, the 2019 Policy, 2020 Policy, and 2021 Policy (together "Second Set of Policies") provide in relevant part as follows:

**SECTION I – COVERAGES**

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**. No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

<u>See</u> Exhibits 9-11.

46.

The Second Set of Policies define "occurrence" to mean "an accident, including continuous or repeated exposure to substantially the  same general harmful conditions."

47.

The Second Set of Policies define "bodily injury" to mean "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."

48.

The Second Set of Policies define "property damage" to mean:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b.  Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it. For the purposes of this insurance, electronic data is not tangible property. As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

For the purposes of this insurance, electronic data is not tangible property. As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

49.

Under Coverage A, the 2014 Policy, 2015 Policy, 2016 Policy, 2017 Policy I, 2017 Policy II, 2018 Policy, 2019 Policy, 2020 Policy, and 2021 Policy (together "Policies") also contained the following exclusion :

**2. Exclusions**

This insurance does not apply to:

**a.  Expected or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

. . .

- 20 -

50.

Under Coverage A, the Policies also contain a Contractual Liability Exclusion. The First Set of Policies excludes coverage for:

### b. Contractual Liability

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. However, if the insurance under this policy does not apply to the liability of the insured, it also does not apply to such liability assumed by the insured under an "insured contract".

(2) That the insured would have in the absence of the contract or agreement.

51.

Under Coverage A, the Second Set of Policies excludes coverage for:

### b. Contractual Liability

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property

damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

   **(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

   **(b)** Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

52.

Under Coverage A, the Policies also contains a Pollution exclusion. The Pollution exclusion in the First Set of Policies states:

**f. Pollution**

**(1)** Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

   (a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph  does not apply to:

   (i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is  used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use by the building's occupants or their guests:

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

(i) Any insured; or

(ii) Any person or organization for whom you may be legally responsible;

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "'pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not

apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "'property damage" arising out of heat, smoke or fumes from a "hostile fire"; or

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

(2)   Any loss, cost or expense arising out of any

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(b) Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of covered "property damage" that the insured would

- 24 -

have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

53.

"Pollutants" are defined by the First Set of Policies to mean "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed."

54.

Under Coverage A, the Pollution exclusion in the Second Set of Policies states:

**f. Pollution**

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

**(i)** "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

**(ii)** "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your

ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

**(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

**(i)** Any insured; or

**(ii)** Any person or organization for whom you may be legally responsible; or

**(d)** At or from any premises, site or location on which any insured or any contractors or  subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

**(i)** "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the

operations being performed by such insured, contractor or subcontractor;

**(ii)** "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

**(e)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants". However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

55.

"Pollutants" are defined by the Second Set of Policies to mean "any solid,

liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot,

fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed."

56.

Under Coverage A, the Policies also contain the following "business risk" exclusions. The First Set of Policies bar coverage for:

**j. Damage To Property**

"Property damage" to:

…

**(5)** Personal property in the care, custody or control of the insured;

**(6)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(7)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**,**(2)**, **(4)** and **(5)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of seven or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section **III** – Limits Of Insurance.

Paragraph **(3)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you. Paragraphs **(4)**, **(5)**, **(6)** and **(7)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(7)** of this exclusion does not apply to "property damage" included in the "products completed operations hazard".

…

57.

Under Coverage A, the Second Set of Policies bar coverage for:

**j. Damage To Property**

"Property damage" to:

…

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of seven or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section **III** – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you. Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement. Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products completed operations hazard".

58.

Under Coverage A, the Policies all contain the following "business risk"

exclusion.

**m.  Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms. This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

…

59.

The First Set of Policies contains an exclusion under Coverage A for Personal

Injury and Advertising Injury, as follows:

**o. Personal Injury And Advertising Injury**

"Bodily injury" arising out of "personal injury" or "advertising injury".

60.

"Personal injury" is defined by the First Set of Policies, as amended, to mean:

other than "bodily injury", arising out of one or more of the following offenses:

**a.**  False arrest, detention or imprisonment;

**b.**  Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral or written publication of material that violates a person's right of privacy; or

**f.** Discrimination, humiliation, sexual harassment and any violation of civil rights caused by such discrimination, humiliation or sexual harassment.

61.

"Advertising injury" is defined by the First Set of Policies to mean:

injury arising out of one or more of the following offenses:

**a.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services in your "advertisement";

**b.** Oral or written publication, in any manner, of material that violates a person's right of privacy in your "advertisement";

**c.** The use of another's advertising idea in your "advertisement"; or

**d.** Infringing upon another's copyright, "trade dress" or slogan in your "advertisement".

62.

The Second Set of Policies contains an exclusion under Coverage A for Personal Injury and Advertising Injury, as follows:

- 31 -

### o. Personal And Advertising Injury

"Bodily injury" arising out of "personal and advertising injury".

63.

"Personal and advertising injury" is defined by the Second Set of Policies, as amended, to mean:

injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral or written publication of material, in any manner, that violates a person's right of privacy;

**f.** The use of another's advertising idea in your "advertisement";

**g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement"; or

**h.** Discrimination, humiliation, sexual harassment and any violation of civil rights caused by such discrimination, humiliation or sexual harassment.

64.

The First Set of Policies provide coverage under Coverage B for "personal and advertising injury" as follows:

**1.   Insuring Agreement**

**a.**   We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. We may at our discretion investigate any claim or offense and settle any claim or "suit" that may result. But:

> **(1)** The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and
>
> **(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

**b.**   This insurance applies to "personal injury" and "advertising injury" only if:

> **(1)** The "personal injury" or "advertising injury" is caused by an offense arising out of your business; and
>
> **(2)** The offense causing the "personal injury" or "advertising injury" was committed in the "coverage territory" during the policy period.

65.

The Second Set of Policies provide coverage under Coverage B for "personal and advertising injury" as follows:

**1.**   Insuring Agreement

**a.**   We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

> **(1)** The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and
>
> **(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C. No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

**b.**   This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

66.

Under Coverage B, the First Set of Policies contain the following exclusion:

This insurance does not apply to "personal injury" or "advertising injury":

**a.   Knowing Violation Of Rights Of Another**

> **(1)** Caused by or at the direction of any insured with the knowledge that the act would violate the rights of another and would inflict "personal injury" or "advertising injury"; or

> **(2)** Expected or intended by any insured. This exclusion a.(2), does not apply to "personal injury".

67.

Under Coverage B, the Second Set of Policies contain the following exclusion:

This insurance does not apply to:

**a.   Knowing Violation Of Rights Of Another**

> "Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

68.

The First Set of Policies' "personal injury and advertising injury" coverage part also excludes coverage for "personal injury" or "advertising injury," as follows:

**e. Contractual Liability**

For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

69.

The Second Set of Policies' "personal and advertising injury" coverage

party also excludes coverage for:

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

70.

The First Set of Policies' "personal injury and advertising injury" coverage

part also excludes coverage for "personal injury" or "advertising injury," as follows:

**m. Pollution**

(1) Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

(2) For any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(b) Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

71.

The Second Set of Policies' "personal and advertising injury" coverage part

also excludes coverage for:

**m.    Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n.    Pollution-related**

Any loss, cost or expense arising out of any:

**(1)**    Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)**    Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

72.

The Policies each contain the following Commercial General Liability Conditions, which apply to Coverages A and B:

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

**2.    Duties In The Event Of Occurrence, Offense, Claim Or Suit**

**a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

**(1)** How, when and where the "occurrence" or offense took place;

**(2)** The names and addresses of any injured persons and witnesses; and

(3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.** If a claim is made or "suit" is brought against any insured, you must:

(1) Immediately record the specifics of the claim or "suit" and the date received; and

(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent

In addition, the requirement at 2a is amended as follows:

**a.** Paragraphs **a.** and **b.** of this condition will not serve to deny any claim for failure to provide us with notice as soon as practicable after an "occurrence" or an offense which may result in a claim:

(1) If the notice of a new claim is given to your "employee"; and

**(2)** That "employee" fails to provide us with notice as soon as practicable.

**b.** This exception shall not apply:

**(1)** To you; or

**(2)** To any officer, director, partner, risk manager or insurance manager of yours.

73.

The First Set of Policies contain the following **conditions**:

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a.    Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b.    Excess Insurance**

This insurance is excess over:

**(1)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(a)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(b)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(c)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

**(d)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

**(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

**(2)** Any other primary insurance available to an insured, other than an additional insured, covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement.

When this insurance is excess, we will have no duty under Coverage A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1)   The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2)  The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

74.

The Second Set of Policies contain the following **conditions**:

### 4.  Other Insurance

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

### a.    Primary Insurance

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

### b.    Excess Insurance

(**1**) This insurance is excess over:

(**a**) Any of the other insurance, whether primary, excess, contingent or on any other basis:

(**i**) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(ii)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(iii)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

**(iv)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

**(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

**(2)** When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**(3)** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(a)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(b)** The total of all deductible and self-insured amounts under all that other insurance.

**(4)** We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

75.

The First Set of Policies, as amended, provide as follows:

**SECTION II – WHO IS AN INSURED**

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business.

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

However, with respect to paragraphs **1.a.** through **1.e.** above, no person is an insured for "bodily injury", "personal injury" or "advertising injury":

**a.** To:

**(1)** You and your spouse if the Named Insured is an individual;

**(2)** Your members, your partners and their spouses if the Named Insured is a partnership or joint venture;

**(3)** Your members if the Named Insured is a Limited Liability Company;

**(4)** Your "executive officers" and directors if the Named Insured is other than a partnership, joint venture or limited liability company; or

**(5)** Your trustees if the Named Insured is a trust.

**b.** To an "employee" of any insured while in the course of his or her employment or performing duties related to the conduct of any insured's business.

**c.** To any insured's "volunteer workers" while performing duties related to the conduct of any insured's business;

**d.** To the spouse, child, parent, brother or sister of any "employee" or  volunteer worker" as a consequence of Paragraphs **b.** or **c.** immediately above.

**2.** Each of the following is also an insured:

**a.** Your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business, or your "volunteer workers" only while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for "bodily injury", "personal injury" or "advertising injury":

**(1)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

- 44 -

    **(2)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)** above;

    **(3)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs **(1)** or **(2)** above; or

    **(4)** Arising out of his or her providing or failing to provide professional health care services.

    **b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager…

The **Who Is an Insured** provision is amended as follows:

**Section II – Who Is An Insured** is amended to include the following as an insured:

**1.** The board of directors and the officers of the association

**2.** All agents and employees of the association;

**3.** All unit owners and other persons entitled to occupy any unit or other portion of the condominium only with respect to liability arising out of or in connection with the use, ownership, maintenance of the common elements or other portion of the condominium which the association has the responsibility to maintain.

76.

The Second Set of Policies provide as follows:

**SECTION II – WHO IS AN INSURED**

**1.** If you are designated in the Declarations as:

    **a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

**2.** Each of the following is also an insured:

**a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

**(1)** "Bodily injury" or "personal and advertising injury":

**(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

**(b)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)(a)** above;

**(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph **(1)(a)** or **(b)** above; or

**(d)** Arising out of his or her providing or failing to provide professional health care services.

**(2)** "Property damage" to property

**(a)** Owned, occupied or used by;

**(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by; you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

The **Who Is an Insured** provision is then amended as follows:

**Section II – Who Is An Insured** is amended to include the following as an insured:

**1.** All agents of the association; and

**2.** All unit owners and other persons entitled to occupy any unit or other portion of the condominium but only with respect to liability arising out of, or in connection with, the use, ownership, maintenance or repair of the common elements or other portion of the condominium which the association has the responsibility to maintain.

# FIRST CLAIM FOR RELIEF

## Late Notice

### 77.

Auto-Owners reiterates paragraphs 1 through 76 of this Complaint as if fully set forth herein.

### 78.

Cox was aware of a claim at least as early as January 2020, when she had an industrial hygienist inspect her property.

### 79.

Cox solicited a meeting with Ovation's Board of Director's on March 26, 2020 regarding alleged issues related to exhaust and soot.

### 80.

Ovation did not notify Auto-Owners of an offense or "occurrence" that may result in a claim or Cox's claims until July 14, 2021.

### 81.

Under conditions set forth in the Policies, Ovation was required to notify the insurer "as soon as practicable of an 'occurrence' or an offense which may result in a claim." See ¶ 72.

82.

A question exists whether Ovation provided timely notice to Auto-Owners of the claim giving rise to the underlying lawsuit.

83.

If Ovation failed to provide timely notice, then the Policies do not provide coverage for the underlying lawsuit against Defendant Ovation, and Auto-Owners has no duty to defend or indemnify Defendant Ovation for the claims asserted against them in the underlying lawsuit.

84.

A controversy of a justiciable nature presently exists among the parties, which demands a declaration by this Court, so that Auto-Owners may have its rights and duties, if any, under the applicable contract of insurance determined and avoid the possible accrual of damages.

85.

Accordingly, Auto-Owners seeks a declaration that no indemnification or duty to defend is owed by Auto-Owners to Defendant Ovation for any liability that may be sought against said Defendant in the underlying lawsuit because they failed to provide timely notice of the claim.

## SECOND CLAIM FOR RELIEF

### <u>Occurrence</u>

86.

Auto-Owners reiterates paragraphs 1 through 76 of this Complaint as if fully set forth herein.

87.

To the extent that Ovation has failed to satisfy the conditions of coverage under Coverage A in the contract of insurance issued by Auto-Owners, the Policies do not provide coverage for the underlying lawsuit against Defendant Ovation, and Auto-Owners as no duty to defend or indemnify Defendant Ovation for the claims asserted against it in the lawsuit.

88.

Specifically, no coverage is owed to Defendant Ovation under Coverage A of the Policies asserted in the underlying lawsuit to the extent that the damages at issue were not "caused by an 'occurrence,'" as defined under the Policies, which occurred during the policy period. <u>See</u> ¶ 41-48.

89.

Therefore, to the extent that the alleged damages were not caused by an "occurrence" under the Policies at issue, no coverage is afforded under said Policies

for liability or damages that may be sought against Defendant Ovation in the underlying lawsuit.

90.

For instance, to the extent Cox's alleged injuries were not caused by an accident, there would be no "occurrence" sufficient to satisfy the insuring agreement, and there would be no coverage under the Policies.

91.

A controversy of a justiciable nature presently exists among the parties, which demands a declaration by this Court, in order that Auto-Owners may have its rights and duties under the applicable contracts of insurance determined and avoid the possible accrual of damages.

92.

Accordingly, Auto-Owners seeks a declaration that no indemnification or duty to defend is owed by Auto-Owners to Defendant Ovation if there was no "occurrence."

## THIRD CLAIM FOR RELIEF

### Bodily Injury or Property Damage

93.

Auto-Owners reiterates paragraphs 1 through 76 of this Complaint as if fully set forth herein.

94.

To the extent that Ovation has failed to satisfy the conditions of coverage under Coverage A in the contracts of insurance issued by Auto-Owners, the Policies do not provide coverage for the underlying lawsuit against Defendant Ovation, and Auto-Owners has no duty to defend or indemnify Defendant Ovation for the claims asserted against it in that lawsuit.

95.

Specifically, the Auto-Owners Policies at issue, under Coverage A, require that the alleged occurrence be the result of bodily injury or property damage. See ¶ 41-48.

96.

To the extent that Plaintiff seeks to recover for damage which did not cause tangible damage to property, such as, but not limited to, the accumulation of soot or

diminution in value of property, the conditions of coverage referenced in paragraph 41-48 of this Complaint are not satisfied.

97.

To the extent that Plaintiff seeks to recover for damage which did not cause bodily injury, such as sickness or disease, such as, but not limited to, loss of sleep, loss of appetite, or other symptoms which are neither sickness nor disease, the conditions of coverage referenced in paragraph 41-48 of this Complaint are not satisfied.

98.

To the extent that Plaintiff seeks to recover for damage which is neither bodily injury nor physical damage, such as for specific performance, a restraining order, or injunctive relief, the conditions of coverage referenced in paragraph 41-48 of this Complaint are not satisfied.

99.

A controversy of a justiciable nature presently exists among the parties, which demands a declaration by this Court, in order that Auto-Owners may have its rights and duties under the applicable contracts of insurance determined and avoid the possible accrual of damages.

100.

Accordingly, Auto-Owners seeks a declaration that no indemnification or duty to defend is owed by Auto-Owners to Defendant Ovation for damages which are neither bodily injury nor property damage.

**FOURTH CLAIM FOR RELIEF**

**Damage Known Prior to Policy Period**

101.

Auto-Owners reiterates paragraphs 1 through 76 of this Complaint as if fully set forth herein.

102.

Cox contends that she was aware of the issues giving rise to the underlying lawsuit at some point during her ownership of Unit 210.

103.

Cox hired an industrial hygienist in January 2020.

104.

Cox requested a meeting with Ovation's Board of Directors on March 26, 2020 regarding the facts and circumstances which are alleged in the underlying lawsuit.

105.

As a condition of coverage under Coverage A, the insurance agreements do not provide coverage for "bodily injury" or "property damage" or which is known to an insured prior to the policy period.  <u>See</u> ¶ 41-48.

106.

To the extent that alleged bodily injury or property damage was known to an insured before the beginning of any of the applicable policy periods, Ovation breached the conditions of coverage of the Auto-Owners Policies, as to that Policy and all subsequent Policies.

107.

For instance, and without limiting the date that Ovation first had knowledge of the potential claims for bodily injury or property damage, to the extent that alleged bodily injury or property damage was known to an insured before July 6, 2020, the 2020 Policy and the 2021 Policy would not provide coverage.

108.

A question exists whether Ovation had knowledge of the bodily injury and property damage claimed by Cox prior to the inception of the policy period for the each of the Auto-Owners Policies.

109.

If Ovation had knowledge of bodily injury or property damage prior to the policy period for any Auto-Owners Policy, then that Auto-Owners Policy does not provide coverage for the underlying lawsuit against Defendant Ovation, and Auto-Owners has no duty to defend or indemnify Defendant Ovation for the claims asserted against it in that lawsuit.

110.

A controversy of a justiciable nature presently exists among the parties, which demands a declaration by this Court, in order that Auto-Owners may have its rights and duties, if any, under the applicable contracts of insurance determined and avoid the possible accrual of damages.

111.

Accordingly, for each policy period for which an insured had knowledge of the allegations of property damage or bodily injury, Auto-Owners seeks a declaration that no indemnification or duty to defend is owed by Auto-Owners to Defendant Ovation for any liability that may be sought against said Defendant in the underlying lawsuit because Ovation had prior knowledge of property damage before the first date of that policy period.

## FIFTH CLAIM FOR RELIEF

### <u>Expected or Intended Injury – Exclusion to Coverage A</u>

#### 112.

Auto-Owners reiterates paragraphs 1 through 76 of this Complaint as if fully set forth herein.

#### 113.

To the extent that the contracts of insurance issued by Auto-Owners do not provide coverage for the underlying lawsuit against Defendant Ovation, Auto-Owners has no duty to defend or indemnify Defendant Ovation for the claims asserted against it in that lawsuit.

#### 114.

Specifically, the Policies at issue contains exclusions from coverage under Coverage A for liability for bodily injury expected or intended by the insured. <u>See</u> ¶ 49.

#### 115.

To the extent the damages at issue in the underlying lawsuit arise out of bodily injury or property damage "expected or intended from the standpoint of the insured," the exclusions referenced in paragraph 49 of this Complaint apply.

116.

Auto-Owners owes no duty under Coverage A to defend or indemnify Defendant Ovation for the damages asserted against Ovation in the underlying lawsuit because the damages were the result of Ovation's acts or omissions, were expected or intended from the standpoint of Ovation, and therefore fall within the expected or intended exclusions set forth in paragraph 49 of this Complaint.

117.

A controversy of a justiciable nature presently exists among the parties, which demands a declaration by this Court, in order that Auto-Owners may have its rights and duties under the applicable contract of insurance determined and avoid the possible accrual of damages.

118.

Accordingly, Auto-Owners seeks a declaration that no indemnification or duty to defend is owed by Auto-Owners to the Defendant Ovation for any liability that may come within the expected or intended exclusions recited in paragraph 49 of this Complaint, including but not limited to, any punitive damages that may be sought against said Defendant in the underlying lawsuit.

## SIXTH CLAIM FOR RELIEF

## <u>Contractual Liability– Exclusion to Coverage A</u>

### 119.

Auto-Owners reiterates paragraphs 1 through 76 of this Complaint as if fully set forth herein.

### 120.

To the extent that the contracts of insurance issued by Auto-Owners do not provide coverage for the underlying lawsuit against Defendant Ovation, Auto-Owners has no duty to defend or indemnify Defendant Ovation for the claims asserted against it in that lawsuit.

### 121.

Specifically, the Policies at issue contains exclusions from coverage under Coverage A for bodily injury or property damage arising from Ovation's contractual agreements in which Ovation assumes liability to pay for bodily injury or property damage to a third person. <u>See</u> ¶ 50-51.

### 122.

To the extent Ovation is obligated to pay Cox's alleged damages which arise out of any contractual agreement made with Ovation, the exclusions referenced in paragraphs 50-51 of this Complaint apply.

123.

Auto-Owners owes no duty under Coverage A to defend or indemnify Defendant Ovation for the liability and damages asserted against Ovation in the underlying lawsuit because the liability and damages were the result of Ovation's contractual agreement, Ovation's Declarations, and therefore fall within the contractual liability exclusion set forth in paragraph 50-51 of this Complaint.

124.

A controversy of a justiciable nature presently exists among the parties, which demands a declaration by this Court, in order that Auto-Owners may have its rights and duties under the applicable contract of insurance determined and avoid the possible accrual of damages.

125.

Accordingly, Auto-Owners seeks a declaration that no indemnification or duty to defend is owed by Auto-Owners to the Defendant Ovation for any liability that may come within the contractual liability exclusion recited in paragraph 50-51 of this Complaint, including, but not limited to, any punitive damages that may be sought against said Defendant in the underlying lawsuit.

## SEVENTH CLAIM FOR RELIEF

## <u>Pollution– Exclusion to Coverage A</u>

### 126.

Auto-Owners reiterates paragraphs 1 through 76 of this Complaint as if fully set forth herein.

### 127.

To the extent that the contracts of insurance issued by Auto-Owners do not provide coverage for the underlying lawsuit against Defendant Ovation, Auto-Owners has no duty to defend or indemnify Defendant Ovation for the claims asserted against it in that lawsuit.

### 128.

Specifically, the Policies at issue contains exclusions for coverage under Coverage A for bodily injury or property damage "arising out of the actual, alleged or threated discharge, dispersal, seepage, migration, release or escape of 'pollutants.'" <u>See</u> ¶ 52-55.

### 129.

Cox asserts that Ovation's acts or omissions, including but not limited to the permitting soot and exhaust to enter her unit.   The alleged intrusion of soot is the

underlying basis for all of Cox's claims against Ovation, including claims for bodily injury or property damage.

130.

To the extent that Ovation is obligated to pay Cox's alleged damages which are subject to a pollution exclusion, the exclusion referenced in paragraph 52-55 of this Complaint applies.

131.

Auto-Owners owes no duty to defend or indemnify under Coverage A Defendant Ovation for the damages asserted against Ovation in the underlying lawsuit because the damages were the result of Ovation's acts or omissions that permitted soot and exhaust, pollutants, to enter Cox's unit, and therefore any alleged injuries fall within the pollution exclusion set forth in paragraph 52-55 of this Complaint.

132.

A controversy of a justiciable nature presently exists among the parties, which demands a declaration by this Court, in order that Auto-Owners may have its rights and duties under the applicable contract of insurance determined and avoid the possible accrual of damages.

133.

Accordingly, Auto-Owners seeks a declaration that no indemnification or duty to defend is owed by Auto-Owners to the Defendant Ovation for any liability that may come within the pollution exclusion recited in paragraph 52-55 of this Complaint, including, but not limited to, any punitive damages that may be sought against said Defendant in the underlying lawsuit.

## EIGHTH CLAIM FOR RELIEF

## Business Risk– Exclusions to Coverage A

134.

Auto-Owners reiterates paragraphs 1 through 76 of this Complaint as if fully set forth therein.

135.

To the extent that the contracts of insurance issued by Auto-Owners do not provide coverage for the underlying lawsuit against Defendant Ovation, Auto-Owners has no duty to defend or indemnify Defendant Ovation for the claims asserted against it in that lawsuit.

136.

Specifically, the Policies at issue contains business risk exclusions under Coverage A for property damage to "that particular part of real property on which

[Defendant] or any contractors or subcontractors working directly or indirectly on [Defendant's] behalf are performing operations, if the 'property damage' arises out of those operations". See ¶ 56-58.

137.

Cox alleges that Ovation's failure to remedy the permeation of exhaust and soot into her unit by Ovation's generator, to direct the generator's exhaust pipe away from the direction of her unit and maintain safe generator operations, per Ovation's Declarations, caused her physical symptoms.

138.

To the extent that Ovation is obligated to pay Cox's alleged damages which are subject to the business risk damage to property exclusion, the exclusion referenced in paragraphs 56-58 of this Complaint apply.

139.

Auto-Owners owes no duty under Coverage A to defend or indemnify Defendant Ovation for damages asserted against Ovation in the underlying lawsuit because the property damages were the result of Ovation's failure to remedy the permeation of exhaust and soot into Cox's unit and maintain safe generator operations, and therefore any alleged injuries fall within the damage to property exclusion set forth in paragraphs 56-58 of this Complaint.

140.

A controversy of a justiciable nature presently exists among the parties, which demands a declaration by this Court, in order that Auto-Owners may have its rights and duties under the applicable contract of insurance determined and avoid the possible accrual of damages.

141.

Accordingly, Auto-Owners seeks a declaration that no indemnification or duty to defend is owed by Auto-Owners to the Defendant Ovation for any liability that may come within the damage to impair property or property not physically injured exclusion recited in paragraphs 56-58 of this Complaint, including, but not limited to, punitive damages that may be sought against Defendant in the underlying lawsuit.

## NINTH CLAIM FOR RELIEF

### Personal and/or Advertising Injury –Exclusion to Coverage A

142.

Auto-Owners reiterates paragraphs 1 through 76 of this Complaint as if fully set forth herein.

143.

To the extent that the contracts of insurance issued by Auto-Owners do not provide coverage for the underlying lawsuit against Defendant Ovation, Auto-Owners has no duty to defend or indemnify Defendant Ovation for the claims asserted against it in that lawsuit.

144.

Specifically, the First Set of Policies contain an exclusion to coverage under Coverage A for bodily injury arising out of "personal injury" or "advertising injury." See ¶ 59-61.

145.

The Second Set of Policies contain an exclusion to coverage under Coverage A for bodily injury arising out of "personal and advertising injury."  See ¶ 62-63.

146.

Cox alleges that the entry of soot into Unit 210 has caused her damages and constitutes a nuisance.  She further alleges that she has been unable to occupy her property as a result of the entry of soot into Unit 210.

147.

To the extent that Ovation is obligated to pay Cox's alleged damages which are subject to the Personal Injury And Advertising Injury exclusion in the First Set

of Policies or the Personal And Advertising Injury exclusion in the Second Set of Policies, the exclusion referenced in paragraphs 59-62 of this Complaint apply.

148.

Auto-Owners owes no duty under Coverage A to defend or indemnify Defendant Ovation for damages asserted against Ovation in the underlying lawsuit because the property damages were the result of Ovation's failure to remedy the permeation of exhaust and soot into Cox's unit and maintain safe generator operations, and therefore any alleged injuries fall within the damage to property exclusion set forth in paragraphs 59-63 of this Complaint.

149.

A controversy of a justiciable nature presently exists among the parties, which demands a declaration by this Court, in order that Auto-Owners may have its rights and duties under the applicable contract of insurance determined and avoid the possible accrual of damages.

150.

Accordingly, Auto-Owners seeks a declaration that no indemnification or duty to defend is owed by Auto-Owners to the Defendant Ovation for any liability that may come within the damage to impair property or property not physically injured exclusion recited in paragraphs 59-62 of this Complaint, including, but not

limited to, punitive damages that may be sought against Defendant in the underlying lawsuit.

## TENTH CLAIM FOR RELIEF

### <u>Policy Period – Coverage B</u>

### 151.

Auto-Owners reiterates paragraphs 1 through 76 of this Complaint as if fully set forth herein.

### 152.

To the extent that Ovation has failed to satisfy the conditions of coverage under Coverage B in the contracts of insurance issued by Auto-Owners, the Policies do not provide coverage for the underlying lawsuit against Defendant Ovation, and Auto-Owners has no duty to defend or indemnify Defendant Ovation for the claims asserted against it in that lawsuit.

### 153.

Specifically, the Policies at issue, under Coverage B, provide coverage for "personal injury" or "advertising injury" as to the First Set of Policies or "personal and advertising injury" as to the Second Set of Policies only if the offense arises out of your business and occurs during the policy period.  <u>See</u> ¶ 64-65.

154.

To the extent that Plaintiff seeks to recover for offenses which were not committed during a particular policy period, the conditions of coverage for that Policy referenced in paragraph 64-65 of this Complaint are not satisfied.

155.

A controversy of a justiciable nature presently exists among the parties, which demands a declaration by this Court, in order that Auto-Owners may have its rights and duties under the applicable contracts of insurance determined and avoid the possible accrual of damages.

156.

Accordingly, Auto-Owners seeks a declaration that no indemnification or duty to defend is owed by Auto-Owners to Defendant Ovation for offenses which do not arise out of Ovation's business or which were not committed during a particular Policy period.

**ELEVENTH CLAIM FOR RELIEF**

**Knowing Violation Of Rights Of Another – Exclusion under Coverage B**

157.

Auto-Owners reiterates paragraphs 1 through 76 of this Complaint as if fully set forth herein.

158.

To the extent that the contracts of insurance issued by Auto-Owners do not provide coverage for the underlying lawsuit against Defendant Ovation, Auto-Owners has no duty to defend or indemnify Defendant Ovation for the claims asserted against it in that lawsuit.

159.

Specifically, the Policies at issue contains exclusions from coverage under Coverage B for "personal injury" and "advertising injury" as to the First Set of Policies and "personal and advertising injury" as to the Second Set of Policies for knowing violations of the right of another. See ¶ 66-67.

160.

To the extent the damages at issue in the underlying lawsuit arise out of "personal injury" and "advertising injury" as to the First Set of Policies that was "caused by or at the direction of any insured with the knowledge that the act would violate the rights of another and would inflict 'personal injury' or 'advertising injury'" or was "expected or intend by any insured", the exclusion referenced in paragraph 66 of this Complaint apply.

161.

To the extent the damages at issue in the underlying lawsuit arise out of "personal and advertising injury" as to the Second Set of Policies that was "caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury'", the exclusions referenced in paragraph 67 of this Complaint apply.

162.

For instance, to the extent that the alleged entry of exhaust or soot into Unit 210 was alleged to be caused by Ovation, the exclusions referenced in paragraph 67 of this Complaint apply.

163.

Auto-Owners owes no duty under Coverage B to defend or indemnify Defendant Ovation for the damages asserted against Ovation in the underlying lawsuit because the damages were the result of Ovation's knowing violation of the rights of another, and therefore fall within the knowing violation of rights of another exclusions set forth in paragraphs 66-67 of this Complaint.

164.

A controversy of a justiciable nature presently exists among the parties, which demands a declaration by this Court, in order that Auto-Owners may have its rights

and duties under the applicable contract of insurance determined and avoid the possible accrual of damages.

165.

Accordingly, Auto-Owners seeks a declaration that no indemnification or duty to defend is owed by Auto-Owners to the Defendant Ovation for any liability that may come within the knowing violation of rights of another exclusions recited in paragraph 66-67 of this Complaint, including but not limited to, any punitive damages that may be sought against said Defendant in the underlying lawsuit.

## TWELFTH CLAIM FOR RELIEF

### Contractual Liability– Exclusion to Coverage B

166.

Auto-Owners reiterates paragraphs 1 through 76 of this Complaint as if fully set forth herein.

167.

To the extent that the contracts of insurance issued by Auto-Owners do not provide coverage for the underlying lawsuit against Defendant Ovation, Auto-Owners has no duty to defend or indemnify Defendant Ovation for the claims asserted against it in that lawsuit.

168.

Specifically, the Policies at issue contains exclusions from coverage under Coverage B ("personal injury and advertising injury" as to the First Set of Policies and "personal and advertising injury" as to the Second Set of Policies) arising from Ovation's contractual agreements in which Ovation assumes liability in a contract or agreement. See ¶ 68-69.

169.

To the extent Ovation is obligated to pay Cox's alleged damages which arise out of any contractual agreements in which Ovation assumes liability in a contract or agreement, the exclusions referenced in paragraphs 68-69 of this Complaint apply.

170.

Auto-Owners owes no duty under Coverage B to defend or indemnify Defendant Ovation for the liability and damages asserted against Ovation in the underlying lawsuit to the extent that Ovation assumed any liability in a contract or agreement, such as Ovation's Declarations, and therefore fall within the contractual liability exclusion set forth in paragraph 68-69 of this Complaint.

171.

A controversy of a justiciable nature presently exists among the parties, which demands a declaration by this Court, in order that Auto-Owners may have its rights and duties under the applicable contract of insurance determined and avoid the possible accrual of damages.

172.

Accordingly, Auto-Owners seeks a declaration that no indemnification or duty to defend is owed by Auto-Owners to the Defendant Ovation for any liability that may come within the contractual liability exclusion recited in paragraphs 68-70 of this Complaint, including, but not limited to, any punitive damages that may be sought against said Defendant in the underlying lawsuit.

**THIRTEENTH CLAIM FOR RELIEF**

**<u>Pollution– Exclusion to Coverage B</u>**

173.

Auto-Owners reiterates paragraphs 1 through 76 of this Complaint as if fully set forth herein.

174.

To the extent that the contracts of insurance issued by Auto-Owners do not provide coverage for the underlying lawsuit against Defendant Ovation, Auto-

Owners has no duty to defend or indemnify Defendant Ovation for the claims asserted against it in that lawsuit.

175.

Specifically, the Policies at issue contains exclusions for coverage under Coverage B for "personal injury" and "advertising injury" as to the First Set of Policies or "personal and advertising injury" as to the Second Set of Policies "arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants' at any time." The Policies also exclude coverage for certain pollution-related expenses. See ¶ 70-71.

176.

Cox asserts that Ovation's acts or omissions, including but not limited to the permitting soot and exhaust to enter her unit.

177.

To the extent that Ovation is obligated to pay Cox's alleged damages which are subject to a pollution exclusion, the exclusion referenced in paragraphs 70-71 of this Complaint applies.

178.

Auto-Owners owes no duty to defend or indemnify under Coverage B Defendant Ovation for the damages asserted against Ovation in the underlying

lawsuit because the damages were the result of Ovation's acts or omissions that permitted soot and exhaust, pollutants, to enter Cox's unit, and therefore any alleged injuries fall within the pollution exclusion set forth in paragraphs 70-71 of this Complaint.

179.

A controversy of a justiciable nature presently exists among the parties, which demands a declaration by this Court, in order that Auto-Owners may have its rights and duties under the applicable contract of insurance determined and avoid the possible accrual of damages.

180.

Accordingly, Auto-Owners seeks a declaration that no indemnification or duty to defend is owed by Auto-Owners to the Defendant Ovation for any liability that may come within the pollution exclusion recited in paragraphs 70-71of this Complaint, including, but not limited to, any punitive damages that may be sought against said Defendant in the underlying lawsuit.

## FOURTEENTH CLAIM FOR RELIEF

### <u>Non-Cooperation</u>

181.

Auto-Owners reiterates paragraphs 1 through 76 of this Complaint as if fully set forth herein.

182.

Ovation is required to authorize Auto-Owners to obtain records and other information and cooperate with Auto-Owners in its investigation or settlement of the claim or defense of the suit.  <u>See</u> ¶ 72.

183.

Auto-Owners has requested information from Ovation about information relevant to the diesel generators, communications between Cox and Ovation regarding same, the maintenance and use of the Ovation Generators, the design of the building and the Ovation Generators, and other polies which may also be in effect,  and otherwise requested Ovation's cooperation in this lawsuit.

184.

A question exists whether Ovation breached its obligations to cooperate with Auto-Owners investigation of this claim.

185.

If Ovation failed or fails to cooperate with Auto-Owners, then the Policies do not provide coverage for the underlying lawsuit against Defendant Ovation, and Auto-Owners has no duty to defend or indemnify Defendant Ovation for the claims asserted against it in that lawsuit.

186.

A controversy of a justiciable nature presently exists among the parties, which demands a declaration by this Court, in order that Auto-Owners may have its rights and duties, if any, under the applicable contracts of insurance determined and avoid the possible accrual of damages.

187.

Accordingly, Auto-Owners seeks a declaration that no indemnification or duty to defend is owed by Auto-Owners to Defendant Ovation for any liability that may be sought against said Defendant in the underlying lawsuit because Ovation failed to cooperate with Auto-Owners' investigation and defense of the claim.

## FIFTEENTH CLAIM FOR RELIEF

### <u>Other Insurance</u>

188.

Auto-Owners reiterates paragraphs 1 through 76 of this Complaint as if fully set forth herein.

189.

Under the Policies, Auto-Owners' coverage obligations are limited to the extent that other insurance provides coverage for this claim.  <u>See</u> ¶ 73-74.

190.

A question exists whether other insurance exists which may provide coverage to Ovation for the damages sought by Cox in the underlying lawsuit.

191.

If other insurance exists which provides coverage to Ovation for this claim, then the coverage under the Policies is limited or may not exist, and Auto-Owners may have no duty to defend or indemnify Defendant Ovation for the claims asserted against it in that lawsuit.

192.

A controversy of a justiciable nature presently exists among the parties, which demands a declaration by this Court, in order that Auto-Owners may have its rights

and duties, if any, under the applicable contracts of insurance determined and avoid the possible accrual of damages.

193.

Accordingly, Auto-Owners seeks a declaration that its obligation to indemnify and its duty to defend is limited by the other insurance provisions of Policies, as recited in Paragraph 73-74.

**SIXTEENTH CLAIM FOR RELIEF**

**<u>Who Is an Insured</u>**

194.

Auto-Owners reiterates paragraphs 1 through 76 of this Complaint as if fully set forth herein.

195.

The Policies identifies Ovation Condominium Association, Inc. as the named insured. <u>See</u> ¶ Exhibits 3-11.

196.

Cox is a unit owner within the Ovation Condominium Association, Inc.

197.

To the extent that Cox is considered an insured and such status would preclude coverage under the Policies for any reason, including the applicability of any other

terms, conditions, or exclusions in the Policies, no coverage may exist under the Policies.

198.

A controversy of a justiciable nature presently exists between the parties, which demands a declaration by the Court, so that Auto-Owners may have its rights and duties under the applicable contract of insurance determined and avoid the possible accrual of damages.

199.

Accordingly, Auto-Owners seeks a declaration from this Court that no indemnification or duty to defend is owed to Defendant Ovation or Defendant Cox for any liability or damages to the extent that Defendant Cox is considered an insured and such status would preclude coverage under the Policies.

**WHEREFORE,** Auto-Owners pray:

a. That this Court enter a Declaratory Judgment declaring that Auto-Owners has no duty to defend or indemnify Defendant Ovation Condominium Association, Inc., under the aforementioned contracts of insurance for any claims made against them in the underlying lawsuit;

b. That Auto-Owners be awarded its costs in this action;

c.  That this Court award such other and further relief as this honorable Court may deem proper under the circumstances; and

d.  That process and summons be issued to all Defendants herein and that service on the Defendants be had as required by law.

Respectfully submitted this ___30th___ day of December, 2021.

Respectfully submitted,

SWIFT, CURRIE, McGHEE & HIERS

*/s/  Rebecca E. Strickland*
Rebecca E. Strickland
Georgia Bar No. 358183
*Attorney for Plaintiff Auto-Owners*
*Insurance Company*

The Peachtree, Suite 300
1355 Peachtree Street, N.E.
Atlanta, Georgia 30309
Tel:  404-874-8800
Rebecca.strickland@swiftcurrie.com

4870-8563-5076, v. 3