## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| AUTO-OWNERS INSURANCE COMPANY, | ) ) ) | |
| Plaintiff | ) ) | |
| v. | ) ) | CIVIL ACTION FILE NO.: 1:21-cv-05326-LMM |
| OVATION CONDOMINIUM ASSOCIATION, INC., AND ALYS W. COX, | ) ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

## PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS TO WHICH NO GENUINE ISSUE EXISTS TO BE TRIED

COMES NOW, Plaintiff Auto-Owners Insurance Company ("Auto-Owners"), and files its Statement of Undisputed Material Facts to Which No Genuine Issue Exists to be Tried ("SUMF"), showing this Court as follows:

1.

Auto-Owners issued Policy Number 142318-48194320-14 to named insured Ovation Condominium Association, Inc. ("Ovation"), with effective dates from January 1, 2014 – January 1, 2015 (the "2014 Policy"). Ex. C, Kayira Aff.,¶¶ 4-5, Ex. 1 to Ex. C; see also Complaint, ¶ 31 [Doc. 1]; Ex. 3 to Complaint [Doc. 1-3]; Ovation Answer, ¶ 31 [Doc. 6].

2.

Auto-Owners issued Tailored Protection Policy Number 142318-80194320-15 to Ovation as the named insured with effective dates from January 1, 2015 through January 1, 2016 (the "2015 Policy").  Exhibit "C", ¶¶6-7, Ex. 2 to Ex. C; See also Complaint, ¶ 32 [Doc. 1]; Ex. 4 to Complaint [Doc. 1-4]; Ovation Answer, ¶ 32 [Doc. 6].

3.

Auto-Owners issued renewal Tailored Protection Policy Number 142318-80194320-16 to Ovation as the named insured with effective dates from January 1, 2016 through January 1, 2017 (the "2016 Policy").  Exhibit "C", ¶¶8-9, Ex. 3 to Ex. C; See also Complaint, ¶ 33 [Doc. 1]; Ex. 5 to Complaint [Doc. 1-5]; Ovation Answer, ¶ 33 [Doc. 6].

4.

Auto-Owners issued renewal Tailored Protection Policy Number 142318-801943020-17 to Ovation as the named insured with effective dates from January 1, 2017 through January 1, 2018 (the "2017 Policy I").  Exhibit "C", ¶¶10-11, Ex. 4 to Ex. C; See also Complaint, ¶ 34 [Doc. 1]; Ex. 6 to Complaint [Doc. 1-6]; Ovation Answer, ¶ 34 [Doc. 6].

5.

The 2017 Policy I was cancelled effective July 6, 2017. Complaint, ¶35 [Doc. 1]; Ex. C, ¶ 12.

6.

Auto-Owners issued and renewed Tailored Protection Policy Number 142318-80096018-17 (the "2017 Policy II") to Ovation as the named insured with effective dates from July 6, 2017 through July 6, 2022. Exhibit "C", ¶¶ 13-14, Ex. 5 to Ex. C; See also Complaint, ¶ 36, [Doc. 1]; Ex. 7 to Complaint [Doc. 1-7]; Ovation Answer, ¶ 36 [Doc. 6].

7.

Auto-Owners issued renewal Tailored Protection Policy Number 142318-80096018-18 to Ovation as the named insured with effective dates from July 6, 2018 through July 6, 2019 (the "2018 Policy").  Exhibit "C", ¶¶ 15-16, Ex. 6 to Ex. C; Complaint, ¶ 37 [Doc. 1]; Ex. 8 to Complaint, [Doc. 1-8]; Ovation Answer, ¶ 37 [Doc. 6].

8.

Auto-Owners issued renewal Tailored Protection Policy Number 142318-80096018-19 on April 23, 2019 to Ovation as the named insured with effective dates from July 6, 2019 through July 6, 2020 (the "2019 Policy").  Exhibit "C", ¶¶17-18,

Ex. 7 to Ex. C; Complaint, ¶ 38 [Doc. 1]; Ex. 9 to Complaint [Doc. 1-9]; Ovation Answer, ¶ 38 [Doc. 6].

9.

Auto-Owners issued renewal Tailored Protection Policy Number 142318-80096018-20 on April 27, 2020 to Ovation as the named insured with effective dates from July 6, 2020 through July 6, 2021 (the "2020 Policy").  Exhibit "C", ¶¶19-20, Ex. 8 to Ex. C; Complaint, ¶ 39 [Doc. 1]; Ex. 10 to Complaint [Doc. 1-10]; Ovation Answer, ¶ 39 [Doc. 6].

10.

Auto-Owners issued renewal Tailored Protection Policy Number 142318-80096018-21 on April 30, 2021 to Ovation as the named insured with effective dates from July 6, 2021 through July 6, 2022 (the "2021 Policy").  Exhibit "C", ¶¶21-22, Ex. 9 to Ex. C; Complaint, ¶40 [Doc. 1]; Ex. 11 to Complaint [Doc. 1-11]; Ovation Answer, ¶ 40 [Doc. 6].

11.

Each of the above-referenced Policies provided commercial general liability coverage for bodily injury and property damage with limits of $1 million per occurrence and $2 million general aggregate (other than products completed operations).  See Exhibit "C", ¶¶ 5-22; Exhibits 1-9 to Ex. C; Complaint, ¶¶ 31-40.

[Doc. 1]; Exhibits 3-11 to Complaint [Doc. 1-3 through Doc. 1-11]; Ovation Answer, ¶¶ 31-40 [Doc. 6].

12.

In the **Commercial General Liability Coverage Form** (55300), the 2014 Policy, 2015 Policy, 2016 Policy, and 2017 Policy I, ("First Set of Policies") provide in relevant part, as follows:

> *Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.*
>
> *Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.*
>
> *The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.*
>
> *Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.*
>
> *SECTION I – COVERAGES*
>
> *COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY*
>
> *1. Insuring Agreement*
>
> > *a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right*

and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

    **(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

    **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**. No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.** This insurance applies to "bodily injury" and "property damage" only if:

    **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

    **(2)** The "bodily injury" or "property damage" occurs during the policy period; and

    **(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

    ***c.*** *"Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:*

        ***(1)*** *Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;*

        ***(2)*** *Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or*

        ***(3)*** *Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.*

    ***d.*** *Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".*

Exhibit "C", ¶¶4-11, Ex. 1-4 to Ex. C; Form 55300(7-05), p. 1-2; see also

Complaint ¶¶ 31-35, 41 [Doc. 1]; Ex. 3-6 to Complaint [Doc. 1-3 through Doc. 1-

6]; Ovation Answer ¶ 41 [Doc. 6].

## 13.

    The First Set of Policies define "bodily injury" to mean "bodily injury, bodily sickness or bodily disease sustained by a person, including death resulting from any of these at any time." Id., Form 55300(7-05), p. 14; Complaint ¶43 [Doc. 1]; Ovation Answer, ¶ 43 [Doc. 6].

## 14.

    The First Set of Policies define "property damage" to mean:

    a.  Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    b.  Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

       For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

<u>Id</u>., Form 55300(7-05), p. 17; Complaint, ¶ 44 [Doc. 1]; Ovation Answer, ¶ 44 [Doc. 6].

15.

The First Set of Policies define "suit" to mean:

a civil proceeding in which damages because of "bodily injury", "property damage," "personal injury," or "advertising injury" to which this insurance applies are alleged. "Suit" includes:

    a.    An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

    b.    Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

<u>Id</u>., Form 55300(7-05), p. 18.

16.

The First Set of Policies define "occurrence" to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Id., Form 55300(7-05), p. 16.

17.

In the **Commercial General Liability Coverage Form** (CG 00 01 04 13), The 2017 Policy II, the 2018 Policy, the 2019 Policy, 2020 Policy, and 2021 Policy (together "Second Set of Policies") provide in relevant part, as follows:

> *Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.*
>
> *Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.*
>
> *The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured. Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.*
>
> *SECTION I – COVERAGES*
>
> *COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY*
>
> *1. Insuring Agreement*
>
> > *a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property*

damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

(2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**. No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments-Coverages **A** and **B**.

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2) The "bodily injury" or "property damage" occurs during the policy period; and

(3) Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or

- 10 -

> resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

> c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

> d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

>> **(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

>> **(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

>> **(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

> e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

Exhibit "C", ¶¶13-22, Ex. 5-9 to Ex. C; Form CG 00 01 04 13, p. 1; Complaint, ¶¶

36-40, 45 [Doc. 1]; Ex. 7-11 to Complaint [Doc. 1-7 through Doc. 1-11]; Ovation

Answer, ¶ 45 [Doc. 6].

18.

The Second Set of Policies define "bodily injury" to mean "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." Id., Form CG 00 01 0413, p. 11; Complaint, ¶47 [Doc. 1]; Ovation Answer, ¶ 47 [Doc. 6].

19.

The Second Set of Policies define "property damage" to mean:

a. *Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or*
b. *Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it. For the purposes of this insurance, electronic data is not tangible property. As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.*

*For the purposes of this insurance, electronic data is not tangible property.*
*As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.*

Id., Form CG 00 01 0413, pp. 13-14; Complaint, ¶ 48 [Doc. 1]; Ovation Answer, ¶ 48 [Doc. 6].

20.

*The Second Set of Policies define "suit" to mean:*

> *a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:*
> *a.  An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or*
> *b.  Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.*

Id., Form CG 00 01 0413, p. 14.

21.

The Second Set of Policies define "occurrence" to mean "an accident, including continuous or repeated exposure to substantially the  same general harmful conditions." Id., Form CG 00 01 0413, p. 13; Complaint, ¶ 46 [Doc. 1]; Ovation Answer, ¶ 46 [Doc. 6].

22.

Coverage A in each of the Policies also contains a Pollution exclusion.  The Pollution exclusion in the First Set of Policies states:

**f.  *Pollution***

**(1)** *Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":*

(a) *At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:*

    (i) *"Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use by the building's occupants or their guests:*

    (ii) *"Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or*

    (iii) *"Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";*

(b) *At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;*

(c) *Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:*

    (i) *Any insured; or*

    (ii) *Any person or organization for whom you may be legally responsible;*

(d) *At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "'pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:*

    (i) *"Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive*

them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "'property damage" arising out of heat, smoke or fumes from a "hostile fire"; or

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

(2) Any loss, cost or expense arising out of any

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(b) Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of covered "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

<u>See</u> Exhibit "C", ¶¶4-11, Ex. 1-4 to Ex. C; Form 55300 (7-05), pp. 2-4; Complaint, ¶ 52 [Doc. 1]; Ex. 3-6 to Complaint [Doc. 1-3 through Doc. 1-6]; Ovation Answer, ¶ 52 [Doc. 6].

23.

"Pollutants" are defined by the First Set of Policies to mean "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed." <u>Id</u>.; Ex. C, ¶4-11, Ex. 1-4 to Ex. C; Form 55300 (7-05), p. 17; Complaint, ¶53 [Doc. 1]; Ex. 3- Ex. 6 to Complaint [Doc. 1-3 through Doc. 1-6]; Ovation Answer, ¶ 53 [Doc. 6].

24.

The Pollution exclusion in the Second Set of Policies states:

*f.* ***Pollution***

*(1)* *"Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants".*
*(a)* *At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:*
*(i)* *"Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;*

      *(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or*

      *(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";*

*(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;*

*(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:*

      *(i) Any insured; or*

      *(ii) Any person or organization for whom you may be legally responsible; or*

*(d) At or from any premises, site or location on which any insured or any contractors or  subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:*

      *(i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;*

      **(ii)** *"Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or*

      **(iii)** *"Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".*

   **(e)** *At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".*

  **(2)** *Any loss, cost or expense arising out of any:*

   **(a)** *Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or*

   **(b)** *Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants". However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.*

See Ex. C, ¶¶13-22, Ex. 5-9 to Ex. C; Form CG 00 01 04 13, pp. 2-3; Complaint, ¶ 54 [Doc. 1]; Ex. 7-11 to Complaint [Doc. 1-7 through Doc. 1-11]; Ovation Answer, ¶ 54 [Doc. 6].

25.

      "Pollutants" are defined by the Second Set of Policies to mean "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot,

- 18 -

fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed." Ex. C, ¶¶ 13-22, Ex. 5-9 to Ex. C; Form CG 00010413, p. 13; Complaint ¶ 55; Ex. 7-11 to Complaint [Doc. 1-7 through Doc. 1-11]; Ovation Answer, ¶ 55 [Doc. 6].

26.

The First Set of Policies' "personal injury and advertising injury" coverage part also excludes coverage for "personal injury" or "advertising injury," as follows:

**m. Pollution**

> *(1) Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.*

> *(2) For any loss, cost or expense arising out of any:*
>   *(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or*

>   *(b) Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".*

Ex. C, ¶4-11, Ex. 1-4 to Ex. C; Form 55300 (7-05), p. 9; Complaint, ¶70 [Doc. 1]; Ex. 3-6 to Complaint [Doc. 1-3 through 1-6]; Ovation Answer, ¶ 70 [Doc. 6].

27.

The Second Set of Policies' "personal and advertising injury" coverage part also excludes coverage for:

> **m.   Pollution**
> *"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.*
>
> **n.   Pollution-related**
> *Any loss, cost or expense arising out of any:*
> *(1)   Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or*
>
> *(2)   Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".*

Ex. C, ¶13-22, Ex. 5-9 to Ex. C; Form CG 00 01 04 13, p. 6; Complaint ¶ 71 [Doc. 1]; Ex. 7-11 to Complaint [Doc. 1-7 through 1-11]; Ovation Answer, ¶ 71 [Doc. 6].

28.

The Policies each contain the following Commercial General Liability Conditions, which apply to Coverages A and B:

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

### 2. Duties In The Event Of Occurrence, Offense, Claim Or Suit

**a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

    **(1)** How, when and where the "occurrence" or offense took place;

    **(2)** The names and addresses of any injured persons and witnesses; and

    **(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.** If a claim is made or "suit" is brought against any insured, you must:

    **(1)** Immediately record the specifics of the claim or "suit" and the date received; and

    **(2)** Notify us as soon as practicable.

    You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

    **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

    **(2)** Authorize us to obtain records and other information;

    **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

    **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent

In addition, the requirement at 2a is amended as follows:

    **a.** *Paragraphs **a.** and **b.** of this condition will not serve to deny any claim for failure to provide us with notice as soon as practicable after an "occurrence" or an offense which may result in a claim:*

        **(1)** *If the notice of a new claim is given to your "employee"; and*

        **(2)** *That "employee" fails to provide us with notice as soon as practicable.*

    **b.** *This exception shall not apply:*

        **(1)** *To you; or*

        **(2)** *To any officer, director, partner, risk manager or insurance manager of yours.*

Ex. C, ¶¶4-22, Ex. 1-9to Ex. Cs; Complaint, ¶72 [Doc. 1]; Form 55300 (7-05), p. 14, Form 55352(10-08). p. 2; Form CG0001 0413, p. 10; Form 55352(5-17), pp. 1-2; Ex. 3-11 to Complaint [Doc. 1-3 through Doc. 1-11]; Ovation Answer, ¶ 72 [Doc. 6].

29.

"Personal injury" is defined by the First Set of Policies, as amended, to mean:

other than "bodily injury", arising out of one or more of the following offenses:

    **a.** False arrest, detention or imprisonment;

    **b.** Malicious prosecution;

    **c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral or written publication of material that violates a person's right of privacy; or

**f.** Discrimination, humiliation, sexual harassment and any violation of civil rights caused by such discrimination, humiliation or sexual harassment.

Complaint, ¶60 [Doc. 1]; Ex. C, ¶¶ 4-11, Ex. 1-4 to Ex. C; Form 55300 (7-05), p.

17; Ovation Answer, ¶ 60 [Doc. 6].

30.

"Advertising injury" is defined by the First Set of Policies to mean:

injury arising out of one or more of the following offenses:

**a.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services in your "advertisement";

**b.** Oral or written publication, in any manner, of material that violates a person's right of privacy in your "advertisement";

**c.** The use of another's advertising idea in your "advertisement"; or

**d.** Infringing upon another's copyright, "trade dress" or slogan in your "advertisement".

Complaint, ¶61 [Doc. 1]; Ex. C, ¶ ¶ 4-11, Ex. 1-4 to Ex. C; Form 55300 (7-05), p.

14; Ovation Answer, ¶ 61 [Doc. 6].

31.

The First Set of Policies contains an exclusion under Coverage A for Personal Injury and Advertising Injury, as follows:

**o. Personal Injury And Advertising Injury**

"Bodily injury" arising out of "personal injury" or "advertising injury".

Complaint, ¶ 59 [Doc. 1]; Ex. C, ¶¶ 4-11, Ex. 1-4 to Ex. C; Form 55300 (7-05), p. 6; Ovation Answer, ¶ 59 [Doc. 6].

32.

The Second Set of Policies contains an exclusion under Coverage A for Personal Injury and Advertising Injury, as follows:

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

Complaint, ¶62 [Doc. 1]; Ex. C, ¶¶ 13-22, Ex. 5-9 to Ex. C; Form CG 00 01 04 13, p. 5; Ovation Answer, ¶ 62 [Doc. 6].

33.

"Personal and advertising injury" is defined by the Second Set of Policies, as amended, to mean:

injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral or written publication of material, in any manner, that violates a person's right of privacy;

**f.** The use of another's advertising idea in your "advertisement";

**g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement"; or

**h.** Discrimination, humiliation, sexual harassment and any violation of civil rights caused by such discrimination, humiliation or sexual harassment.

Complaint, ¶63 [Doc. 1]; Ex. C, ¶¶ 13-22, Ex. 5-9 to Ex. C; Form CG 00 01 04 13,

p. 13; Ovation Answer, ¶ 63 [Doc. 6].

34.

The First Set of Policies provide coverage under Coverage B for "personal

and advertising injury" as follows:

**1.    Insuring Agreement**

   **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any

"suit" seeking those damages. We may at our discretion investigate any claim or offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

**b.**   This insurance applies to "personal injury" and "advertising injury" only if:

**(1)** The "personal injury" or "advertising injury" is caused by an offense arising out of your business; and

**(2)** The offense causing the "personal injury" or "advertising injury" was committed in the "coverage territory" during the policy period.

Complaint, ¶64 [Doc. 1]; Ex. C, ¶¶ 4-11, Ex. 1-4 to Ex. C; Form 55300 (7-05), pp.

6-7; Ovation Answer, ¶ 64 [Doc. 6].

35.

The Second Set of Policies provide coverage under Coverage B for "personal and advertising injury" as follows:

**1.**   Insuring Agreement

**a.**   We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising

- 26 -

injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

> **(1)** The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

> **(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C. No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

Complaint, ¶65 [Doc. 1]; Ex C, ¶¶ 13-22, Ex. 5-9 to Ex. C; Form CG 00 01 04 13, p. 5; Ovation Answer, ¶ 65 [Doc. 6].

## 36.

Auto-Owners first received notice of Cox's claim on July 14, 2021 through an email sent at 4:03 p.m. from Katie Willis at Hamby & Aloisio, Inc., addressed to Auto-Owners' Kennesaw claims office.  Ex. C, ¶ 23, Ex. 10 to Ex. C.

## 37.

Auto-Owners did not receive notice of either Cox's claims or Wykis' claims at any time prior to July 14, 2021. Ex. C, ¶ 24.

38.

On October 11, 2021, Auto-Owners sent a reservation of rights letter to named insured Ovation Condominium Association by certified mail and U.S. Mail regarding Cox's claims in care of its registered agent, CT Corporation System, 289 S. Culver Street, Lawrenceville, Georgia 30046-4805 and to Mark Rusnak at P.O. Box 702348, Dallas, Texas 75370-2348. Ex. C, ¶¶ 25-26, Ex. 11 to Ex. C.

39.

On October 11, 2021, Auto-Owners sent a reservation of rights letter to named insured Ovation Condominium Association by certified mail and U.S. Mail regarding Wykis' claims in care of its registered agent, CT Corporation System, 289 S. Culver Street, Lawrenceville, Georgia 30046-4805 and to Mark Rusnak at P.O. Box 702348, Dallas, Texas 75370-2348. Ex. C, ¶¶ 27-28, Ex. 12 to Ex. C.

40.

On November 22, 2021, Auto-Owners sent a supplemental reservation of rights letter about Cox's claims to Ovation Condominium Association, Inc. by certified mail and U.S. Mail in care of its registered agent, CT Corporation System, 289 S. Culver Street, Lawrenceville, Georgia 30046-4805 and to Mark Rusnak at P.O. Box 702348, Dallas, Texas 75370-2348. Ex. C, ¶¶ 29-30, Ex. 13 to Ex. C.

41.

On November 22, 2021, Auto-Owners also sent a supplemental reservation of rights letter about Wykis' claims to Ovation Condominium Association, Inc. by certified mail and U.S. Mail in care of its registered agent, CT Corporation System, 289 S. Culver Street, Lawrenceville, Georgia 30046-4805 and to Mark Rusnak at P.O. Box 702348, Dallas, Texas 75370-2348. Ex. C, ¶¶ 31-32, Ex. 14 to Ex. C.

42.

Auto-Owners retained attorney Samantha Mandell of Kendall Mandell, LLC to defend the Association in the underlying lawsuit filed by Cox and in the underlying lawsuit filed by Wykis.  Ex. C, ¶ 33.

43.

On October 20, 2021, Cox filed suit against Ovation in the Superior Court of Fulton County, Civil Action File No. 2021CV355900.  Exhibit "A".

44.

On November 2, , 2021, Wykis filed suit against Ovation in the Superior Court of Fulton County, Civil Action File No. 2021CV356408.  Exhibit "B".

45.

Ovation owns a 19-story condominium building at 3040 Peachtree Road NW, Atlanta, GA 30305 (the "Building"), which was constructed in 2005.  Ex. A, ¶ 2., Ex. B, ¶ 2; Ex. H, ¶ 2.

46.

Cox purchased Unit 210 on February 21, 2006. Ex. A, ¶ 2.

47.

Wykis purchased Unit 208 at Ovation Condominium on March 9, 2020. Ex. B, ¶ 2; Ex. H, ¶ 2.

48.

The Building houses a power backup generator, which was installed in a confined space in one of the lower floors of the parking garage and below the residential units. Ex. A, ¶ 4; Ex. B, ¶ 4; Ex. H, ¶ 4.

49.

The generator expels diesel exhaust through an exhaust pipe which terminates at the southern-facing external wall of the building. Ex. A, ¶5; Ex. B, ¶ 5; Ex. H, ¶ 5

50.

The generator is operated during power failures and during monthly or bimonthly testing. Ex. A, ¶7; Ex. B, ¶ 7; Ex. H, ¶ 7.

51.

Cox and Wykis allege that Ovation controls the use of the generator and the routing of the diesel exhaust. Ex. A, ¶8; Ex. B, ¶ 8; Ex. H,  ¶ 8.

52.

The diesel exhaust allegedly contains neurotoxins and soot, which are hazardous to human health. Ex. A, ¶9; Ex. B, ¶ 9; Ex. H, ¶ 9.

53.

Cox's Unit 210 and Wykis' Unit 208 are located above the diesel exhaust termination point. Ex. A, ¶12; Ex. B, ¶ 12; Ex. H, ¶ 13.

54.

Since 2005, Ovation allegedly failed to maintain and seal the stucco wall structure adjacent to Unit 210 and failed to route the diesel exhaust to a termination point which would prevent neurotoxins from entering Unit 210 or other residential units. Ex. A, ¶13; Ex. B, ¶ 13. Ex. H, ¶ 14.

55.

Allegedly due to the combination of (1) the termination point for the diesel exhaust, (2) air flow between the interior of Unit 210 and the exterior atmosphere, and (3) negative air pressure, diesel exhaust fumes, gaseous particulates, and physical particulates have repeatedly entered Unit 210, causing contamination with

diesel exhaust, neurotoxin molecular particulates, and soot.  Ex. A, ¶¶ 14-18; Ex. B,
¶¶ 14-18; Ex. H, ¶¶ 18-23.

56.

Cox and Wykis allege that their units have "been contaminated with diesel
exhaust neuro-toxin molecular particulates thereby causing damage." Ex. A, ¶17;
Ex. B, ¶17; Ex. H, ¶22.

57.

In Count I of their Complaints, Cox and Wykis allege nuisance and property
damages.  Ex. A, ¶¶ 19-25; Ex. B, ¶¶ 19-25;Ex. H, ¶¶ 3-30.

58.

Cox and Wykis contend that Ovation's use and operation of the Ovation
Generator is a continuing, abatable nuisance pursuant to O.C.G.A. §41-1-1 and that
such nuisance has caused property damage to Unit 208 and to Unit 210, diminution
in the value of the units, and hazards to their physical health. Ex. A, ¶¶ 19-25; Ex.
B, ¶¶ 19-25; Ex. H, ¶¶ 3-30

59.

It also allegedly caused Cox to move out of Unit 210, and caused Wykis to
move out of Unit 208. Id.

- 32 -

60.

Cox and Wykis seek pain and suffering damages, and attorney fees. Ex. A, ¶¶ 24-25; Ex. B, ¶¶ 24-25. Ex. H, ¶¶ 29-30.

61.

In Count II of their Complaints, Cox and Wykis allege negligence and negligence *per se*. Ex. A, ¶¶ 26-34; Ex. B, ¶¶ 26-34.  Ex. H, ¶¶ 31-39.

62.

Ovation allegedly failed to prevent hazardous neurotoxins contained in diesel exhaust from entering Unit 208 and Unit 210 and damaging Cox and Wykis' health, failed to address the location of the generator's diesel exhaust termination, failed to exercise ordinary and prudent care when operating the diesel generator when Ovation became aware of the hazardous condition, failed to abate the hazardous condition, failed to investigate the hazardous condition after becoming aware of its existence, failed to operate the diesel generator in a safe and prudent manner, and otherwise failed to act reasonably and prudently under the circumstances.  Ex. A, ¶28; Ex. B, ¶ 28; Ex. H, ¶ 33.

63.

The alleged violation of O.C.G.A. § 41-1-1 and any other violations of statutory law allegedly constitute negligence *per se*. Ex. A ¶30; Ex. B ¶30; Ex. H ¶35.

64.

Cox and Wykis allege serious injuries to their health, pain, and suffering.  Ex. A ¶¶ 32-33; Ex. B ¶¶ 32-33;  Ex. H ¶¶ 37-38.

65.

Count III in Cox's and Wykis' original complaint asserts a claim for breach of the Declaration. Ex. A, ¶¶ 35-44; Ex. B, ¶¶ 35-44. Wykis' amended complaint asserts a claim for breach of contract based upon breach of the Declaration. Ex. H, ¶¶ 59-69. Wyki's amended complaint also asserts a count for breach of fiduciary duty. Ex. H, ¶¶ 70-80.

66.

Under the Declaration, Ovation has a duty to Cox and Wykis to maintain and keep in good repair any "Area of Common Responsibility." Ex. A, ¶ 36; Ex. B,  ¶ 36; Ex. H, ¶ 60.

67.

68.   Cox and Wykis allegedly fulfilled their duties to promptly report any defect or need for repairs for which the Association is responsible. Ex. A ¶¶ 37, 39; Ex. B ¶¶ 37, 39; Ex. H ¶¶ 61, 64.

Ovation allegedly breached its duty to investigate possible hazardous conditions directly caused by the operation of the Building and to abate any continuing nuisance. Ex. A,  ¶¶ 39-40; Ex. B,  ¶¶ 39-40; Ex. H,  ¶¶ 64-65.

69.

Ovation denied the existence of the condition and asserted that trucks on Peachtree Street caused the diesel exhaust. Ex. A, ¶ 40; Ex. B, ¶ 40; Ex. H, ¶ 65.

70.

Ovation allegedly breached its duty to maintain and keep in good repair areas of common responsibility, including the exterior stucco wall near Unit 210 and the termination of the generator's diesel exhaust; breached its duty to maintain and operate the generator safely; and failed to abate the nuisance.  Ex. A, ¶¶ 41-42; Ex. B, ¶¶ 41-42; Ex. H, ¶¶ 66-67.

71.

Cox and Wykis allegedly suffered specific and direct damages and attorney fees. Ex. A, ¶ 43; Ex. B, ¶ 43; Ex. H, ¶ 68.

72.

Count IV of each original Complaint seeks specific performance, requiring Ovation to abate the nuisance.  Ex. A, ¶¶ 45-48; Ex. B, ¶¶ 45-48.

73.

Count V in each original Complaint seeks a temporary restraining order prohibiting operation of the generator in a manner that causes diesel exhaust to terminate at its current location. Ex. A, ¶¶ 49-54; Ex. B, ¶¶ 49-54.  Wykis' amended complaint seeks temporary and permanent injunctive relief in Count VII. Ex. H, ¶¶ 81-85.

74.

Count VI in each original Complaint seeks attorney's fees under O.C.G.A. § 13-6-11. Ex. A, ¶¶ 55-57, Ex. B, ¶¶ 55-57.  Count X of Wykis' amended complaint seeks the same.   Ex. H, ¶¶ 112-114.

75.

Count VII in each original Complaint seeks a temporary injunction of the nuisance. Ex. A, ¶¶ 58-62; Ex. B, ¶¶ 58-62. Wykis' amended complaint also seeks an injunction at Count VII Ex. , H ¶¶ 81-89.

76.

In the damages sections of their Complaints, Cox and Wykis allege physical injuries; pain and suffering, including but not limited to actual pain and suffering, mental anguish, interference with normal living, interference with normal enjoyment of life, loss of capacity to labor and earn money, impairment of her body's health and vigor, and limitations on activities; past and future medical expenses; property damage, including permanent direct damage to Unit 208 and Unit 210 and diminished value; and interruption of use and enjoyment of their respective Properties.  Ex. A, ¶¶ 63-68; Ex. B, ¶¶ 63-68; Ex. H, ¶¶ 90-97.

77.

Cox and Wykis also seek punitive damages. Ex. A, ¶ 69; Ex. B, ¶ 69; Ex. H, ¶¶ 97-111.

78.

It is undisputed that the default generator at issue does not heat or cool the Ovation building. Ex. D, Ovation 30(b)(6) Depo, 76:9-76:20; Ex. E, Rusnak Depo, 16:14-16:23; Ex. F, Cox Depo., 84:3-84:7.

79.

The generator was not an HVAC unit and did not dehumidify the building. Ex. D, Ovation 30(b)(6) Depo, 76:21-77:2.

80.

Ovation received notice of Cox's claims in Spring, 2020. Ex. D, Ovation 30(b)(6) Depo, 22:12-22:20.

81.

In March 2020, Cox provided Ovation with a copy of the Culpepper Report, which discussed testing that confirmed the existence of diesel exhaust contaminants in  Cox's unit. Ex. F, Cox Depo., 56:17-59:25; Ex. D, Ovation 30(b)(6) Depo. 62:1-62:13.

82.

Cox participated in a meeting on March 23 or 26, 2020 with Ovation's Board in which Cox described the alleged contamination and its effects on her health and her unit. Cox Depo. 28:2-9:14, 59:6-61:21.

83.

Ovation received notice of similar complaints from unit owner Brianne Wykis in April 2020. Ex. D, Ovation 30(b)(6) Depo, 30:25-31:14.

84.

Ovation's property manager, Mark Rusnak, first provided notice of Cox's claims to Ovation's insurance agent, Buddy Whitaker, upon receipt of Cox's demand on July 13, 2021. Ex. E, Rusnak Depo, 30:8-31:22.

85.

Rusnak, on behalf of Ovation, gave Whitaker notice of Cox's claim between July 13, 2021 and July 14, 2021. Id., at 30:17-31:11.

86.

Similarly, on or about July 29, 2021, Rusnak received a demand package from Brianne Wykis.  Upon receipt of which Rusnak, on behalf of Ovation, notified the Board, Ovation's general counsel, and insurance agent Whitaker. Ex. E, Rusnak Depo, 26:1-26:6.

87.

Cox and Wykis allege that they were "forced to remove [themselves] from [their] home[s] and relocate to mitigate being gassed and exposed to neuro-toxins." Ex. A, ¶23; Ex. B, ¶23; Ex. F, Cox Depo, 27:9-29:25; Ex. G, Wykis Depo., 31:8-32:8, 33:4-33:10, 47:6-47:9, 47:19-48:181, 59:2-59:25.

This 16th day of November, 2022.

Respectfully submitted,

SWIFT, CURRIE, McGHEE & HIERS

/s/ Melissa K. Kahren
Rebecca E. Strickland
Georgia Bar No. 358183
Melissa K. Kahren
Georgia Bar No. 527406
*Attorneys for Plaintiff Auto-Owners Insurance Company*

1420 Peachtree Street, N.E., Ste. 800
Atlanta, Georgia 30309
Tel:  404-874-8800
Rebecca.strickland@swiftcurrie.com
Melissa.kahren@swiftcurrie.com

## <u>CERTIFICATION OF FONT</u>

We hereby certify that this pleading has been prepared with Times New Roman 14 point selection, as approved by the Court in L.R 5.1B.

This 16th day of November, 2022.

Respectfully submitted,

SWIFT, CURRIE, McGHEE & HIERS

*/s/  Melissa K. Kahren*
Rebecca E. Strickland
Georgia Bar No. 358183
Melissa K. Kahren
Georgia Bar No. 527406
*Attorneys for Plaintiff Auto-Owners*
*Insurance Company*

1420 Peachtree Street, N.E.
Suite 800
Atlanta, Georgia 30309
Tel:  404-874-8800
Rebecca.strickland@swiftcurrie.com
Melissa.kahren@swiftcurrie.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed ***PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS TO WHICH NO GENUINE ISSUE EXISTS TO BE TRIED*** with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification and service of such filing to counsel of record as follows:

| | |
|---|---|
| Richard J. Capriola | William W. Downs |
| Eric B. Coleman | Foss Baker |
| Winter Capriola Zenner, LLC | Downs Law, LLC |
| One Ameris Center | 934 Glenwood Avenue, S.E. |
| 3490 Piedmont Road, N.E., Suite 800 | Suite 110 |
| Atlanta, GA 30305 | Atlanta, GA 30316 |
| rcapriola@wczlaw.com | will@downslawllc.com |
| ecoleman@wczlaw.com | foss@downslawllc.com |
| *Attorneys for Defendant Ovation Condominium Association, Inc.* | *Attorneys for Defendant Alys W. Cox* |

This 16th day of November, 2022.

Respectfully submitted,

SWIFT, CURRIE, McGHEE & HIERS

/s/  Melissa K. Kahren
Rebecca E. Strickland
Georgia Bar No. 358183
Melissa K. Kahren
Georgia Bar No. 527406
*Attorneys for Plaintiff Auto-Owners Insurance Company*

1420 Peachtree Street, N.E.
Suite 800
Atlanta, Georgia 30309
Tel:  404-874-8800
Rebecca.strickland@swiftcurrie.com
Melissa.kahren@swiftcurrie.com