IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| AUTO-OWNERS INSURANCE COMPANY, | : : : | |
| Plaintiff, | : : | |
| v. | : : | |
| OVATION CONDOMINIUM ASSOCIATION, INC. & ALYS W. COX, | : : : : | |
| Defendants. | : : : | CIVIL ACTION NOS. 1:21-CV-05326-LMM 1:21-CV-05328-LMM |
| AUTO-OWNERS INSURANCE COMPANY, | : : : | |
| Plaintiff, | : : | |
| v. | : : | |
| OVATION CONDOMINIUM ASSOCIATION, INC. & BRIANNE K. WYKIS, | : : : : | |
| Defendants. | : : | |

**<u>ORDER</u>**

This case comes before the Court on Plaintiff Auto-Owners Insurance Company's Motions for Summary Judgment in Case No. 1:21-cv-05326 ("the Cox Case") [35] and Case No. 1:21-cv-05328 ("the Wykis Case") [42]. In each of these cases, Plaintiff seeks a declaratory judgment regarding coverage for an underlying state lawsuit. Both underlying suits concern the same incident, and

the parties make identical arguments in the Cox and Wykis Cases. Because the issues in these two cases are intertwined, the Court addresses them together. After due consideration, the Court enters the following Order.

I.   **BACKGROUND**

This case concerns an insurance coverage dispute. Defendants Alys Cox and Brianne Wykis each sued Defendant Ovation Condominium Association, Inc. ("Ovation") in state court, alleging personal injuries and property damage relating to the same incident. Cox, Dkt. No. [1-1]; Wykis, Dkt. No. [1-1]. Plaintiff Auto-Owners Insurance Company insures Defendant Ovation and seeks a declaratory judgment, stating that its policies with Defendant Ovation do not cover Defendants Cox and Wykis's state court claims. Cox, Dkt. No. [1]; Wykis, Dkt. No. [1].

Cox and Wykis's state court suits allege injuries from toxins emitted from a generator at Defendant Ovation's condominium building, where Cox and Wykis both own units. Cox, Dkt. No. [35-16] ¶¶ 43–44, 46–47, 51–53, 56; Wykis, Dkt. No. [42-16] ¶¶ 43–44, 46–47, 51–53, 56. Defendant Ovation is the condominium association for the building and thus manages and maintains the common and shared property. Cox, Dkt. No. [36] at 1; Wykis, Dkt. No. [44] at 1. The building houses a backup power generator located in a utility closet in the basement below the residential units. Cox, Dkt. Nos. [35-16] ¶ 48; [36-4] ¶ 48; Wykis, Dkt. Nos. [42-16] ¶ 48; [45] ¶ 48. The generator expels diesel exhaust through an exhaust

pipe and operates during power failures and during monthly or bimonthly testing. Cox, Dkt. No. [35-16] ¶¶ 49–50; Wykis, Dkt. No. [42-16] ¶¶ 49–50.

Cox and Wykis's units are located above the diesel exhaust termination point. Cox, Dkt. No. [35-16] ¶ 53; Wykis, Dkt. No. [42-16] ¶ 53. In the underlying lawsuits, Cox and Wykis allege that Ovation controls the use of the generator and the routing of the diesel exhaust, which contains neurotoxins and soot hazardous to human health. Cox, Dkt. No. [35-16] ¶¶ 51–52; Wykis, Dkt. No. [42-16] ¶¶ 51–52. Cox and Wykis allege that toxic particles in the exhaust contaminated their units and caused damage. Cox, Dkt. No. [35-16] ¶ 56; Wykis, Dkt. No. [42-16] ¶ 56.

Before that dispute, Plaintiff issued and renewed insurance policies to Defendant Ovation from 2014–2021. Cox, Dkt. No. [35-16] ¶¶ 1–10; Wykis, Dkt. No. [42-16] ¶¶ 1–10. The first set of policies spans 2014–2017, and the second set spans 2017–2021. These policies each include two sets of coverage for commercial general liability: Coverage A, which provides for bodily injury and property damage, and Coverage B, which provides for personal injury and advertising liability injury. Cox, Dkt. No. [35-16] ¶¶ 11–12, 17; Wykis, Dkt. No. [42-16] ¶¶ 11–12, 17. In both sets of policies, Coverage A contains a "Pollution" exclusion, which applies to

> (1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

3

> (a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured.

Cox, Dkt. No. [35-16] ¶ 22; Wykis, Dkt. No. [42-16] ¶ 22.

Similarly, the Coverage B provision excludes claims "[a]rising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants' at any time." Cox, Dkt. No. [1-3] at 28; Wykis, Dkt. No. [1-3] at 35. Thus, Coverage B resembles Coverage A but does not contain the requirement that Defendant Ovation owned or occupied the space. Defendant Ovation does not dispute that the Coverage B pollution exclusion bars coverage for its claims under that policy.

The policies define "Pollutants" as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste." Cox, Dkt. No. [35-16] ¶¶ 23, 25; Wykis, Dkt. No. [42-16] ¶¶ 23, 25. The policies do not define "own or occupy," and the parties debate the proper interpretation of those terms. According to Defendant Ovation, the generator and its location are "Common Elements," meaning that the generator is not located within a unit but is on the building's property. Cox, Dkt. No. [36] at 5; Wykis, Dkt. No. [44] at 4–5. Defendant Ovation argues that the Common Elements are owned in equal, undivided interests by the members of the Ovation Condominium Association. Cox, Dkt. No. [36] at 5; Wykis, Dkt. No. [44] at 5. But Defendant Ovation has significant duties regarding these spaces, including managing and maintaining common or shared property, protecting owners'

property values, and providing services to residents. Cox, Dkt. No. [36] at 1–2, 5; Wykis, Dkt. No. [44] at 1, 5.

On October 20, 2021, Cox filed suit against Ovation in the Superior Court of Fulton County, and Wykis filed suit in the same court on November 2, 2021. Cox, Dkt. No. [35-16] ¶¶ 43–44; Wykis, Dkt. No. [42-16] ¶¶ 43–44. On December 30, 2021, Plaintiff filed these actions seeking declaratory judgments stating that it has no duty to indemnify or defend Defendants Ovation, Cox, and Wykis for any liability or damages in the underlying lawsuits. Cox, Dkt. No. [1]; Wykis, Dkt. No. [1]. Plaintiff now moves for summary judgment, asserting that (1) the policies' pollution exclusions bar coverage, (2) notice was untimely, and (3) there is no coverage for economic damages or equitable relief. Cox, Dkt. No. [35-15]; Wykis, Dkt. No. [42-15]. Defendant Ovation opposes Plaintiff's Motions for Summary Judgment. Cox, Dkt. No. [36]; Wykis, Dkt. No. [44]. Defendants Cox and Wykis did not respond to Plaintiff's Motions, leaving them unopposed by them. L.R. 7.1(B), N.D. Ga.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine if the evidence would allow a reasonable jury to find for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "An issue of fact is 'material' if it is a legal element of

the claim under the applicable substantive law which might affect the outcome of the case." Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (citations omitted).

The moving party bears the initial burden of showing the Court, by reference to materials in the record, that there is no genuine dispute as to any material fact that should be decided at trial. Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1260 (11th Cir. 2004) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party discharges its burden by merely "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support [an essential element of] the nonmoving party's case." Celotex Corp., 477 U.S. at 325. In determining whether the moving party has met this burden, the district court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion. Johnson v. Clifton, 74 F.3d 1087, 1090 (11th Cir. 1996).

Once the moving party has adequately supported its motion, the non-movant then has the burden of showing that summary judgment is improper by coming forward with specific facts showing a genuine dispute. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). If the record as a whole could not lead a rational trier of fact to find for the nonmoving party, then there is no genuine dispute for trial. Id. (citations omitted). All reasonable doubts, however, are resolved in favor of the non-movant. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993) (citation omitted).

## III. DISCUSSION

In this case, Plaintiff seeks a declaration from the Court stating that it does not owe any duty to Defendants for any liability or damages. Cox, Dkt. No. [1]; Wykis, Dkt. No. [1]. In Plaintiff's Motions for Summary Judgment, it brings two arguments that would each independently bar coverage for the claims: (1) the policies' pollution exclusions bar coverage as a matter of law, and (2) Defendant Ovation failed to give Plaintiff timely notice of the claim. Cox, Dkt. No. [35-15] at 1–2; Wykis, Dkt. No. [42-15] at 1–2. Further, Plaintiff asserts that there is no coverage for equitable relief or economic damages. Cox, Dkt. No. [35-15] at 2; Wykis, Dkt. No. [42-15] at 2. For the reasons explained below, the Court finds that the pollution exclusions create a total bar for coverage here. Therefore, the Court need not address the issues of notice, equitable relief, and damages.[1]

"Under Georgia law, an insurer seeking to invoke a policy exclusion carries the burden of proving its applicability in a given case." First Specialty Ins. Corp. v. Flowers, 644 S.E.2d 453, 455 (Ga. Ct. App. 2007). To "carry its burden of

---

[1] Plaintiff includes Defendants Cox and Wykis in its pleadings, arguing that their claims would not be covered—to the extent that they could be considered insured by Plaintiff. Defendants Cox and Wykis did not respond to Plaintiff's Motions, leaving them unopposed under this Court's Local Rules. L.R. 7.1(B), N.D. Ga. Even when a motion is unopposed, the Court must ensure that the movant succeeds on the merits. Jackman v. Hasty, No. 1:10-cv-2485-RWS, 2012 WL 1426769, at *2 (N.D. Ga. Apr. 24, 2012). Here, even assuming that Defendants Cox and Wykis could be considered insured by Plaintiff, the evidence indicates that Defendants Cox and Wykis own the generator by virtue of their condominium ownership. Cox, Dkt. Nos. [36] at 5; [35-16] ¶¶ 46–47; Wykis, Dkt. Nos. [44] at 5; [42-16] ¶¶ 46–47. Thus, any potential claims from Defendants Cox and Wykis would also be barred by the pollution exclusions.

showing that a policy exclusion applies," Plaintiff can rely "exclusively upon the allegations against the insured in the underlying complaint." Id. Plaintiff argues that the policies' pollution exclusions preclude coverage as a matter of law. Cox, Dkt. No. [35-15] at 1; Wykis, Dkt. No. [42-15] at 1. In response, Defendant Ovation solely contests that—under the language of the policies' exclusion for Coverage A—it does not "own or occupy" the space where the generator is located.[2] Cox, Dkt. No. [36] at 14–20; Wykis, Dkt. No. [44] at 14–20. Thus, Defendant Ovation asserts that Coverage A's pollution exclusion does not apply here. Cox, Dkt. No. [36] at 15; Wykis, Dkt. No. [44] at 15.

Under Coverage A of the Commercial General Liability Form, "[t]his insurance does not apply to"

> (1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":
>> (a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured.

Cox, Dkt. No. [1-3] at 22; Wykis, Dkt. No. [1-3] at 31. Defendant Ovation does not challenge the policy language, the definition of "pollutants," or the fact that the neurotoxins and soot from the exhaust constitute "pollutants" under the policies. Instead, Defendant Ovation asserts only that it does not own, occupy, rent, or loan the property or the space where the generator is housed. Cox, Dkt. No. [36]

---

[2] In doing so, Defendant Ovation distinguishes several cases cited by Plaintiff in its Motion for Summary Judgment. Cox, Dkt. No. [36] at 15–19; Wykis, Dkt. No. [44] at 15–19. The Court does not rely on that case law here.

8

at 15; Wykis, Dkt. No. [44] at 15. Whether Defendant Ovation rented or loaned the space is not at issue. Thus, the Court need only determine whether Defendant Ovation does—or at any point did—own or occupy the generator and its location. Defendant Ovation insists that Ovation does not own the space because it is a Common Element, meaning that the individual condominium units' owners share ownership over it. Cox, Dkt. No. [36] at 15; Wykis, Dkt. No. [44] at 15. Regardless of whether Defendant Ovation has ever owned the space, the Court finds that it has occupied the space.

Defendant Ovation contends that because the policies do not define "occupied by," the term is susceptible to two or more constructions, requiring a strict construction against Plaintiff. Cox, Dkt. No. [36] at 15; Wykis, Dkt. No. [44] at 15. The Court disagrees. Under Georgia law, "[w]here a term of a policy of insurance is susceptible to two or more constructions, even when such multiple constructions are all logical and reasonable, such term is ambiguous and will be strictly construed against the insurer as the drafter and in favor of the insured." Ga. Farm Bureau Mut. Ins. Co. v. Meyers, 548 S.E.2d 67, 70 (Ga. Ct. App. 2001). Further, an insurance policy "should be read as a layman would read it and not as it might be analyzed by an insurance expert or an attorney." State Farm Mut. Auto. Ins. Co. v. Staton, 685 S.E.2d 263, 265 (Ga. 2009) (quoting Cont'l Ins. Co. v. Am. Motorist Ins. Co., 542 S.E.2d 607, 610 (Ga. Ct. App. 2000)). Additionally, "[e]xceptions and exclusions to coverage must be narrowly and strictly construed against the insurer and liberally construed in favor of the insured to afford

coverage." Meyers, 548 S.E.2d at 69. However, "[n]o construction is required or even permissible when the language employed by the parties in their contract is plain, unambiguous, and capable of only one reasonable interpretation." Citicorp Indus. Credit, Inc. v. Rountree, 364 S.E.2d 65, 68–69 (Ga. Ct. App. 1987) (quoting R. S. Helms, Inc. v. GST Dev. Co., 219 S.E.2d 458, 460 (Ga. Ct. App. 1975)). Such "unambiguous terms are taken in their plain, ordinary and popular sense as supplied by dictionaries." Record Town, Inc. v. Sugarloaf Mills, Ltd. P'ship of Ga., 687 S.E.2d 640, 643 (Ga. Ct. App. 2009).

The Court finds that "occupied by" is plain and unambiguous, so no alternative construction is required. Instead, ordinary dictionary definitions control. The legal definition of "occupy" includes "[t]o seize or take possession of" or "to enter and take control of (a place)," as well as "[t]o take up the extent, space, room, or time of." Occupy, Black's Law Dictionary (11th ed. 2019). The general definition is similar: "to take or hold possession or control of" or "to fill or perform the functions of." Occupy, Merriam-Webster's Collegiate Dictionary (11th ed. 2019). Therefore, the term "occupied by" in the policies is not susceptible to multiple constructions, and the Court will not strictly construe the term against Plaintiff. Meyers, 548 S.E.2d at 69.

Although Defendant Ovation argues that Plaintiff should have been more specific in drafting the policies to address Common Elements, the Court finds a more tailored policy unnecessary. The generator is in a utility closet in the basement–not within the boundaries of an owner's unit. Cox, Dkt. No. [36] at 5;

Wykis, Dkt. No. [44] at 4–5. While unit owners have equal undivided interests in the Common Elements, Defendant Ovation occupies the utility closet pursuant to its duties to manage and maintain both the space and the generator. Even if Defendant Ovation does not presently or permanently occupy the space, the plain language of the policies requires only that the space "is or was at any time . . . occupied by" Ovation. Cox, Dkt. No. [1-3] at 22; Wykis, Dkt. No. [1-3] at 31. Managing and maintaining a utility closet with a generator, including by providing monthly or bimonthly testing, requires that—at some point in time—the space was "occupied by" Ovation. Cox, Dkt. No. [35-16] ¶¶ 49–50; Wykis, Dkt. No. [42-16] ¶¶ 49–50. Because Defendant Ovation has occupied the utility closet, Plaintiff has met its burden of proving that Coverage A claims for "bodily injury" or "property damage" are barred as a matter of law.

     Defendant Ovation seeks to create a genuine dispute of material fact on this point with an affidavit from Carole Hannah, the Community Association Manager for Defendant Ovation. Cox, Dkt. No. [36-1]; Wykis, Dkt. No. [45-1]. She claims that Ovation does not own or occupy the generator's location. Cox, Dkt. No. [36-1]; Wykis, Dkt. No. [45-1]. But this affidavit does not demonstrate a dispute of material fact because her relevant assertions are merely legal conclusions insufficient to create a genuine dispute.

     Finally, as noted above, Defendant Ovation focuses its arguments on Coverage A, rather than Coverage B. Coverage B's pollution exclusion language resembles Coverage A's but does not contain the requirement that Defendant

11

Ovation once owned or occupied the space. Cox, Dkt. No. [1-3] at 28; Wykis, Dkt. No. [1-3] at 35. Because the Court finds that claims under Coverage A are excluded based on that requirement, and because Coverage B is broader, any claims under Coverage B are also excluded. Therefore, Plaintiff has no duty to defend or indemnify Defendant Ovation for any of Defendants Cox and Wykis's claims in their underlying lawsuits and is thus entitled to summary judgment.

## IV.   CONCLUSION

In accordance with the foregoing, Plaintiff's Motion for Summary Judgment in the Cox Case (1:21-cv-05326) [35] is **GRANTED**. Plaintiff's Motion for Summary Judgment in the Wykis Case (1:21-cv-05328) [42] is also **GRANTED**. The Clerk is **DIRECTED** to **CLOSE** both cases.

**IT IS SO ORDERED** this 18th day of August, 2023.

_____
**Leigh Martin May**
**United States District Judge**